DECISION AND JUDGMENT ENTRY
 {¶ 1} Jeffrey Dunn ("Appellant") appeals his conviction in the Circleville Municipal Court for OVI, child endangering, and obstructing justice. He argues that the trial court erred when it (1) instructed the jury on the child endangering charge; (2) sent a dash videotape recording the incident to the jury for review; (3) admitted impermissible testimony; (4) improperly interjected itself into the trial; and (5) denied the Appellant's administrative license suspension appeal. The Appellant also argues that his conviction for obstructing official business is against the manifest weight of the evidence and is contrary to law. Because we are not persuaded by the Appellant's arguments, we affirm the decision of the trial court.
 I. Facts {¶ 2} On September 13, 2005, Trooper Munyon ("trooper") of the Ohio State Highway Patrol was north of State Route 752 on U.S. Route 23 northbound in Pickaway County, Ohio, when he visually estimated the speed of a southbound 1991 Chevrolet pickup operated by the Appellant to be in excess of the posted 55 miles per hour speed limit. The trooper activated his radar to confirm his visual observation and clocked the Appellant's speed at 64 and 65 miles per hour.
 {¶ 3} The trooper then turned his vehicle southbound to stop the Appellant's vehicle for the speeding violation and ultimately caught up to the Appellant's vehicle at the intersection of State Route 752 and U.S. Route 23. When turning his vehicle, the trooper activated the video camera in his cruiser. While the Appellant was still at the intersection, the trooper activated his overhead lights to attempt to stop the Appellant's vehicle. The Appellant then proceeded to turn and drove left of center in the process. While traveling down State Route 752, the trooper also noted that the Appellant was weaving within his lane of travel and went over the right edge line. Because the Appellant failed to pull over and stop his vehicle even with the overhead lights of the cruiser activated, the trooper was forced to activate his air horn to get the Appellant to stop his vehicle.
 {¶ 4} When the Appellant stopped his vehicle, the trooper approached the vehicle and asked for the Appellant's operator's license, registration, and proof of insurance. While the Appellant attempted to obtain this documentation for the trooper, the trooper detected the strong odor of an alcoholic beverage coming from the Appellant's vehicle. The trooper noted that the Appellant fumbled through his wallet in order to obtain his driver's license for presentation to the trooper. The officer also observed that the Appellant's speech and actions were slow and delayed and that his eyes were bloodshot and glassy. During this time, the trooper saw two young girls in the vehicle with the Appellant, one girl being his daughter and the other being his daughter's friend.
 {¶ 5} Following his initial observations, the trooper asked the Appellant whether he had been drinking. The Appellant acknowledged that he had consumed some alcohol. The trooper then requested that the Appellant exit the vehicle. As the Appellant exited, the trooper noticed that the Appellant was unsteady on his feet. The Appellant also dropped his cell phone in the process of walking back to the rear of his vehicle. When the Appellant picked up his phone, he threw it into the bed of his truck. The trooper noted that this behavior was unusual. The Appellant next threw the clip off of the cell phone toward the bed of his truck, but missed even though it was only a few feet away.
 {¶ 6} After observing these indicia of alcohol consumption, the trooper asked the Appellant to perform some field sobriety tests. The first test performed was the horizontal gaze nystagmus test. On this test, the Appellant lacked smooth pursuit, nystagmus at maximum deviation, and nystagmus prior to 45 degrees in both eyes for a total of six out of six clues. The trooper then requested the Appellant to perform a walk and turn test. Here the Appellant moved his feet to keep his balance while listening to the instructions, started before the instructions were completed, failed to walk heel to toe on two occasions, and stepped off the line while walking on two occasions.
 {¶ 7} Next, the Appellant performed a one leg stand test, and during this test the Appellant swayed while balancing, hopped on one occasion, and put his foot down on three occasions for a total of three clues out of four. Once the field sobriety tests were completed, the trooper concluded that the Appellant was under the influence of alcohol and placed him under arrest. He then advised the Appellant of his Miranda rights and placed the Appellant in the back of his cruiser. The trooper then went to the Appellant's vehicle to determine the age of the children in the vehicle and to advise them that he would call their family members for transportation. He also called Sergeant Dillard ("sergeant") to meet him at the scene to transport the girls to the patrol post.
 {¶ 8} Once the Appellant became aware that the trooper had called the sergeant to transport his daughter to the patrol post, he became very agitated and began insisting that the trooper call children's services to pick the girls up. He also became upset when the trooper began moving his truck off the roadway. At about this time, the sergeant arrived at the scene to assist the trooper. While the sergeant was standing by the Appellant's vehicle talking to the two young girls, he heard a thumping sound coming from the trooper's cruiser. The sergeant turned around and noticed that the Appellant was in the back seat of the cruiser slamming his head and shoulder up against the right rear window of the car trying to force the door open. Seeing the Appellant's behavior, the sergeant approached the trooper's cruiser, opened the door and advised the Appellant to stop slamming himself up against the door and to just calm down and relax. In response, the Appellant yelled that he did not have to and that the trooper had no right to move the Appellant's vehicle because he had not given him permission to do so. At this point, the Appellant wedged his knee in the cruiser door and blocked the door from being able to be shut. While the trooper shouted for the Appellant to put his foot back in the cruiser, the sergeant went over and advised the Appellant that if he failed to comply with the trooper's request, he would be charged with additional violations. When the Appellant continued refusing to put his leg back in the vehicle, the sergeant advised the Appellant that if he failed to put his leg back in the cruiser, he would be hit with a taser gun. In response, the Appellant advised the sergeant to go ahead. The sergeant then opened the left rear door, slid inside the vehicle, and held his taser up to the Appellant. At the same time, the trooper lifted the Appellant's right leg enough to force it into the cruiser and shut the door.
 {¶ 9} Once the Appellant was again secured in the patrol cruiser, the trooper transported the Appellant to the Ohio State Highway Patrol Post. Once at the post, the trooper advised the Appellant of his Miranda warnings in writing and read him Implied Consent Form 2255. After reviewing these documents with the Appellant, the trooper asked the Appellant to submit to a BAC Datamaster test. The Appellant refused to take the test.
 {¶ 10} The Appellant was subsequently charged with OVI in violation of R.C. 4511.19(A)(1)(a), traveling in excess of the posted speed limit in violation of R.C. 4511.21(D)(1), failure to wear his seat belt in violation of R.C. 4513.265, endangering children in violation of R.C.2919.22(D)(1), and obstructing official business in violation of R.C.2921.31. The Appellant now appeals his conviction, asserting the following assignments of error:
 {¶ 11} 1.DID THE TRIAL COURT COMMIT PREJUDICIAL ERROR IN REGARD TO THE CHARGE OF ENDANGERING CHILDREN?
 {¶ 12} 2. DID THE TRIAL COURT COMMIT PREJUDICIAL ERROR WHEN IT SENT THE UNREDACTED DASH VIDEOTAPE TO THE JURY FOR REVIEW DURING DELIBERATIONS?
 {¶ 13} 3. WAS IT PREJUDICIAL ERROR FOR TROOPER MUNYON TO TWICE VOLUNTEER PROHIBITED EVIDENCE?
 {¶ 14} 4. WAS IT PREJUDICIAL ERROR FOR TROOPER MUNYON TO MENTION HE FOUND THE ALCOHOL IN THE TRUCK?
 {¶ 15} 5. DID THE TRIAL COURT IMPROPERLY INTERJECT ITSELF INTO THE TRIAL?
 {¶ 16} 6. WAS THE VERDICT OF GUILTY FOR OBSTRUCTING JUSTICE AGAINST THE MANIFEST WEIGHT OF THE EVIDENCE AND/OR CONTRARY TO LAW?
 {¶ 17} 7. WAS IT PREJUDICIAL ERROR TO DENY DEFENDANT'S ADMINISTRATIVE LICENSE SUSPENSION APPEAL?
 II. Endangering Children Charge {¶ 18} The Appellant asserts that the trial court committed prejudicial error with regard to the child endangering charge. Specifically, the Appellant argues that the endangering children complaint was fatally defective because the culpable mental state of recklessness was not included. The Appellant also argues that the trial court improperly instructed the jury that it must find the Appellant guilty of child endangering if it found him guilty of OVI.
 {¶ 19} The statute under which the Appellant's child endangerment charge was brought, R.C. 2919.22, specifies no mental state with which offenders must operate in order to make them chargeable. The Supreme Court of Ohio has determined that recklessness is an element of child endangering under subparagraphs (A) and (B) of R.C. 2919.22. SeeState v. McGee, 79 Ohio St.3d 193, 195, 680 N.E.2d 975; State v.Adams (1980), 62 Ohio St.2d 151, 153, 404 N.E.2d 144; State v.O'Brien, 30 Ohio St.3d 122, 124, 508 N.E.2d 144. It has not, however, extended this holding to R.C. 2919.22(C). R.C. 2919.22(C)(1) provides:
 No person shall operate a vehicle, streetcar, or trackless trolley within this state in violation of division (A) of section 4511.19 of the Revised Code when one or more children under eighteen years of age are in the vehicle, streetcar, or trackless trolley. Notwithstanding any other provision of law, a person may be convicted at the same trial or proceeding of a violation of this division and a violation of division (A) of section 4511.19 of the Revised Code that constitutes the basis of the charge of the violation of this division. For purposes of sections 4511.191 to 4511.197 of the Revised Code and all related provisions of law, a person arrested for a violation of this division shall be considered to be under arrest for operating a vehicle while under the influence of alcohol, a drug of abuse, or a combination of them or for operating a vehicle with a prohibited concentration of alcohol in the whole blood, blood serum or plasma, breath, or urine.
 {¶ 20} Because R.C. 2919.22(C) provides no specific degree of culpability, we must turn to R.C. 2901.21(B) for further definition of the required elements of the crime. R.C. 2901.21(B) provides:
 When the section defining an offense does not specify any degree of culpability, and plainly indicates a purpose to impose strict criminal liability for the conduct described in the section, then culpability is not required for a person to be guilty of the offense. When the section neither specifies culpability nor plainly indicates a purpose to impose strict liability, recklessness is sufficient culpability to commit the offense.
 {¶ 21} Applying the procedure announced in R.C. 2901.21(B) to R.C.2919.22(C), it appears that culpability is not required for a person to be guilty of child endangering under R.C. 2919.22(C). R.C. 2919.22(C)(1) does not specify a degree of culpability, as mentioned supra, but evidences an intent to impose strict criminal liability by its dependence upon a violation of R.C. 4511.19(A), in connection with the presence of one or more children under eighteen years of age are in the vehicle, streetcar, or trackless trolley. Violations of R.C. 4511.19(A) are strict liability violations. Addressing R.C. 4511.19, the Supreme Court of Ohio, in State v. Cleary (1986), 22 Ohio St.3d 198, 199,490 N.E.2d 574, stated,
 [T]he statute [R.C. 4511.19] imposes strict criminal liability. We agree with the statement found in State v. Grimsley (1982), 3 Ohio App.3d 265, at 267, 444 N.E.2d 1071:
 "* * * We find in the language chosen by the legislature a plainly indicated purpose to do so, because the overall design of the statute is to protect against the hazards to life, limb and property created by drivers who have consumed so much alcohol that their faculties are impaired. * * * "
State v. Cleary (1986), 22 Ohio St.3d at 199. Because R.C. 2919.22(C) requires in addition to those elements required by R.C. 4511.19 only proof that one or more children under the age of 18 are in the vehicle when the OVI occurs, by extension, it is also a strict liability crime. Therefore, because recklessness is not an element of the charge, it is irrelevant that the complaint did not include a culpable mental state.
 {¶ 22} The Appellant also contends that the trial court improperly instructed the jury that it must find the Appellant guilty of child endangering if it found him guilty of OVI. Prior to hearing any evidence, the trial court judge instructed the jury as follows:
 We have offenses that are strict compliance offenses. That is to say there's not much latitude. So if you find that he was under the influence of alcohol when operating that vehicle and in that vehicle were minor children, that is a child under 18 or a child under 21 who's impaired or handicapped in someway, then that is, has been defined by the legislature as an act of child abuse. Okay? Child endangerment. We have other types of endangerment that you're probably more familiar with particularly being a teacher where someone is abused, starved, neglected, beat, tortured, things like that. And with those particular types of abuse there is a level of culpability and mental state that is required. In this particular case it's a strict liability statute, so if you make a finding as I said, he was under the influence while operating the vehicle and there were children in the car, that defines the offense.
(Emphasis added). Additionally, in his final instructions to the jury, the trial court judge also instructed the jury regarding the child endangerment offense as follows:
 So that means pretty simply, if you find he was driving while impaired you must, therefore, find that he was, if you find that there were children in the vehicle, that he was endangering those children, as a definition of statute. That is, by the way, a zero tolerance statute.
(Emphasis added). A review of these instructions shows that the trial court judge did not require the jury to find the Appellant guilty of child endangering, but rather indicated that if the jury determined the Appellant was under the influence of alcohol while operating his motor vehicle and the jury determined that there were children under the age of 18 in the vehicle at that time, then the jury must find the Appellant guilty of child endangering under R.C. 2919.22(C). Due to the absence of any culpability requirement under R.C. 2919.22(C), this was a proper instruction. The trial court, therefore, did not err when it instructed the jury in this manner.
 {¶ 23} The Appellant also argues that the trial court's failure to sever the Appellant's child endangering charge from his OVI charge was prejudicial error. The Appellant contends that the testimony that there were minors in the vehicle at the time of the OVI charge inflamed the jury and was not relevant to proving the OVI offense. The Appellant, however, overlooks the importance of establishing those individuals present in a vehicle at the time of an OVI charge in order to ascertain the operator of the vehicle.
 {¶ 24} Additionally, the language of R.C. 2919.22(C) clearly demonstrates that the legislature intended that OVI charges and endangering children charges could be tried in the same proceeding. R.C.2919.22(C)(1) provides, in pertinent part:
 Notwithstanding any other provision of law, a person may be convicted at the same trial or proceeding of a violation of this division and a violation of division (A) of section 4511.19 of the Revised Code that constitutes the basis of the charge of the violation of this division.
 {¶ 25} Because all of the elements required for an OVI conviction under R.C. 4511.19 are also required for a child endangering conviction under R.C. 2919.22(C), a jury must hear the evidence for both cases jointly. If an OVI charge under R.C. 4511.19 and a child endangering charge under R.C. 2919.22 are not tried together, double jeopardy attaches to whichever charge is tried second. See generally State v.Kimble, Medina Co. Case No. 02-CR-0319, 2003-Ohio-2779. Because the OVI charge and the child endangerment charge in the case sub judice were tried together, and the Appellant was convicted of both at the same proceeding, as R.C. 2919.22 expressly allows, there was no double jeopardy violation.
 {¶ 26} The Appellant also argues that R.C. 2919.22(C) is unconstitutional as a violation of separation of powers. He charges that it conflicts with Crim.R. 14, which allows a defendant to sever charges when they are prejudicially joined. The Appellant overlooks, however, the fact that a judge or jury must still first necessarily determine that he was under the influence of alcohol or drugs, in violation of R.C. 4511.19, before he can be found guilty of endangering children under R.C. 2922.19(C). Because the Appellant's arguments regarding the child endangerment charge are not well taken, we overrule his first assignment of error.
 III. Unredacted Dash Videotape {¶ 27} In his second assignment of error, the Appellant contends that the trial court committed prejudicial error when it sent the unredacted dash videotape to the jury for review during deliberations. During the trial, the Appellee introduced as an exhibit the dashboard videotape taken by the trooper recording the stop and all subsequent contact the trooper had with the Appellant until his arrival at the State Highway Patrol Post. During this stop, following the Appellant's arrest, the trooper asked the Appellant whether he had previously been cited for OVI. At the trial, when the tape was played to the jury, a recess was taken at the point in the tape when the Appellant was asked whether he had previously been cited for OVI. The tape was then forwarded over the inadmissible statement so that the jury never heard this information.
 {¶ 28} After they commenced deliberations, the jury requested to again view certain portions of the videotape. In order to prevent the jury from hearing any inadmissible statements, the judge sent the bailiff into the jury room to control playing the tape with instructions on exactly where to stop the tape to ensure that the inadmissible statements were not heard by the jury. Neither party questioned the jurors about their deliberations after the trial, nor took any action to schedule a hearing to question the bailiff under oath as to whether the jury heard any inadmissible statements. Additionally, neither party contacted the other to attempt to create an agreed record or resolve any disputed issues.
 {¶ 29} Following the trial, the Appellant submitted a proposed agreed statement of proceedings. This statement was rejected by the Appellee and by the trial court as inaccurate. Following this submission, the Appellant's counsel filed an affidavit of alleged facts. He did not contact the Appellee in order to resolve any disputed issues or to create an agreed record. Likewise, the Appellant's counsel did not schedule a hearing for the court to assist the parties in establishing an agreed statement of the record.
 {¶ 30} In light of these facts, we must initially determine whether the record was properly preserved. App.R. 9 governs the record on appeal and pursuant to App.R. 9(B), the duty to provide a transcript for appellate review falls upon the Appellant. The duty falls upon the Appellant because the Appellant bears the burden of showing error by reference to the matters in the record. See Knapp v. EdwardsLaboratories (1980), 61 Ohio St.2d 197, 199, 400 N.E.2d 384; State v.Prince (1991), 71 Ohio App.3d 694, 698, 595 N.E.2d 376. Keeping this rule in mind, it was the Appellant's duty to ensure that a transcript of all relevant evidence was included when the file was transmitted to this court. Once the trial court rejected the Appellant's proposed agreed statement, it was the Appellant's duty to take action to develop an agreed statement of the record or schedule a hearing so that the court could assist the parties in settling any disputed facts. Instead of pursuing this course of action, Appellant's counsel merely submitted his own affidavit. Appellant's counsel's affidavit does not sufficiently meet the requirements of App.R. 9(C). See King v. Plaster (1991),71 Ohio App.3d 360, 363, 594 N.E.2d 34.
 {¶ 31} Because the record has not been properly preserved, this court cannot properly review any error assigned by the Appellant which relates to the jury's screening of the dash videotape. "An appellate court can reach its decision only upon facts which are adduced in the trial court proceeding and cannot base that decision on allegations founded upon facts from outside the record." Merillat v. Fulton Cty. Bd. ofCommrs. (1991), 73 Ohio App. 459, 463, 597 N.E.2d 1124. Because the facts asserted by the Appellant in his counsel's affidavit are not a part of the record, we must necessarily overrule the Appellant's second assignment of error.
 IV. Trooper's Introduction of Prohibited Evidence {¶ 32} The Appellant next contends that the trial court erred to the prejudice of the Appellant when it allowed the trooper to volunteer prohibited evidence. He argues that it was prejudicial for the trooper to twice volunteer statistical percentages in his responses to questions posed to him regarding the accuracy of the field sobriety tests. The first exchange in question is as follows:
 Prosecutor: Okay is [HGN] a test that you're taught as part as (sic) your training as far as field sobriety testing?
 Trooper: Yes, Sir, it is.
 Prosecutor: And are you taught that, that's an accurate indicator of a person under the influence?
 Trooper: Right. If you, there's actually six clues on HGN. If you receive four out of the six clues, there's a 77% chance that the person's blood alcohol level . . .
 Judge: Sustained. Sustained.
 {¶ 33} The second exchange about which the Appellant contends the trooper introduced prejudicial testimony is as follows:
 Prosecutor: Okay. So how many clues did [the Appellant] get on [the one leg stand] test?
 Trooper: I received three clues on that test.
 Prosecutor: Out of a possible four?
 Trooper: Out of the possible four correct. I believe and also for NHTSA say two or more clues on that. It's a 65% chance . . .
 Prosecutor: Okay. As far as . . .
 Judge: Don't give percentages.
 Trooper: Okay, Sir.
 {¶ 34} The Appellant contends that the trooper's introduction of statistical percentages resulted in prejudicial error to the Appellant. The Appellant depends on State v. Martin, Pickaway App. No. 04CA24,2005-Ohio-1732, to support his argument. Initially, we note that in the first instance where the trooper mentioned a percentage, the trial court judge sustained the Appellant's objection before the trooper provided a full explanation to the jury. In the second instance where the trooper mentioned a percentage, the Appellant's counsel did not object. Still, the trial court judge admonished the trooper against testifying to percentages.
 {¶ 35} In State v. Martin, supra, this court determined that any error that may have occurred was harmless, despite the fact that the testifying officer gave a full explanation of the mathematical probability that the Appellant would have tested over the legal limit, and the fact that the court allowed the officer's testimony over counsel's objection. We likewise determined that there was substantial other evidence present to support the jury's finding. This case is distinguishable from State v. Martin in that the trooper in the case sub judice testified only to percentage results. He was stopped by the court by means of a sustained objection prior to offering any explanation of his statistical testimony to the jury. As such, his statements were not prejudicial to the Appellant. Likewise, as discussed infra, there was substantial other evidence to support the jury's guilty verdict. Therefore, the Appellant's third assignment of error is not well taken.
V. Trooper's Introduction of Detection of Alcohol
 {¶ 36} In his fourth assignment of error, the Appellant argues that it was prejudicial error for the trooper to mention he found alcohol in the Appellant's truck. The testimony to which the Appellant objects was elicited through cross examination. It is as follows:
 Defense Counsel: All right. Now, you said you found a container of alcohol, where did you find that?
 Trooper: It was on his floorboard.
 Defense Counsel: Inside the cab.
 Trooper: Correct.
 Defense Counsel: Was it open?
 Trooper: No, it was closed.
 Defense Counsel: Closed, okay.
 Trooper: I stated that.
 Defense Counsel: So tell the jury what the relevance is of a closed beer can. Why is that important? What does, does that show he's impaired?
 Trooper: No.
 Defense Counsel: Okay so they can ignore that 'cause it doesn't mean anything.
 Trooper: I actually stated to them as we was watching the tape that beer can was actually closed.
 Defense Counsel: Right.
 Trooper: And that was to his benefit so I do say good things about people.
 {¶ 37} The Appellant argues that this testimony about an unopened bottle of beer in the Appellant's truck was not relevant, but was prejudicial to him. The Appellant further contends that the Appellee was trying to show that the Appellant drank all of the time through introduction of the trooper's statements. Although the trooper's statement regarding the presence of an unopened bottle of beer in the Appellant's vehicle may have limited probative value as to the issue of whether he had been consuming alcohol, his testimony is not prejudicial, given the other evidence the Appellee presented. See State v. East, Franklin App. No. 93APC09-1307, 1994 WL 314192, at *4. Additionally, there is no foundation for the Appellant's assertion that the Appellee was trying to show that the Appellant drank all of the time. Having reviewed the evidence, the Appellant's assertion seems to be a baseless accusation. The Appellant's fourth assignment of error is accordingly overruled.
 VI. Trial Court's Interjection of Itself into the Trial {¶ 38} In his fifth assignment of error, the Appellant asserts that the trial court improperly interjected itself into the trial on two specific occasions. First, the Appellant contends that the trial court judge improperly interjected himself into the trial when he told the jury that the Appellant could not walk along U.S. Route 23 from Ohio State Highway Patrol Post 65. In reviewing this issue, we initially note that the trooper had come to the conclusion the Appellant was under the influence of alcohol prior to asking him to submit to a BAC Datamaster test. The sergeant who arrived at the scene following the Appellant's arrest testified to this fact.
 {¶ 39} R.C. 4511.481(A) states that "A pedestrian who is under the influence of alcohol, any drug of abuse, or any combination of them to a degree that renders the pedestrian a hazard shall not walk or be upon a highway." Because the Appellant was considered by the trooper to be under the influence of alcohol, the trooper would be allowing the Appellant to violate R.C. 4511.481 if he allowed the Appellant to walk home from the patrol post. Therefore, in light of a potential violation of R.C. 4511.481(A), it was not improper for the trial court judge to tell the jury that the Appellant could not walk on U.S. Route 23.
 {¶ 40} Next, the Appellant contends that the court should not have questioned the Appellant about smelling of alcohol. In this line of questioning, the Appellant argued that he had diesel fuel on his person, and that the trooper either could not have smelled alcohol, or that it was diesel fuel and not alcohol that the trooper smelled. At this point, the judge asked a question in order to clarify what the Appellant meant by his statements. The exchange occurred as follows:
 Judge: How would he know what he smelled like?
 Appellant: I don't know, trust me, I know the chemicals I had on me, I mean, I had diesel fuel, I had a big amount of diesel fuel on me so if you could over smell anything over diesel fuel if you've ever smelled it.
 Defense Counsel: Okay.
 Judge: Does that mean it must have been a really strong odor of alcohol if you could smell it over diesel fuel?
 {¶ 41} The Appellant's counsel did not object to the trial court judge's questions. Evid.R. 614 governs the calling and interrogation of witnesses by the court. Pursuant to Evid.R. 614(B), a trial court may question witnesses in an impartial manner. A trial court must not, however, indicate its opinion regarding the evidence or a witness' credibility through the use of questions. See State v. Prokos (1993),91 Ohio App.3d 39, 44, 631 N.E.2d 684. Since a trial court's powers pursuant to Evid.R. 614 are within its discretion, appellate review of a trial court's interrogation of witnesses is governed by an abuse of discretion standard. Id. An abuse of discretion involves more than an error of judgment. It connotes an attitude on the part of the court that is unreasonable, unconscionable, or arbitrary. Franklin Cty. Sheriff'sDept. v. State Emp. Relations Bd. (1992), 63 Ohio St.3d 498, 506,589 N.E.2d 24; Wilmington Steel Products, Inc. v. Cleveland Elec.Illuminating Co. (1991), 60 Ohio St.3d 120, 122, 573 N.E.2d 622. An examination of the questions the trial court judge posed to the Appellant does not reveal any improper purpose or partiality. The trial court judge was simply attempting to clarify the Appellant's meaning from the statements the Appellant made. The court's questions were neutrally phrased and did not in any way indicate its opinion regarding the witness' credibility. For these reasons, the Appellant's fifth assignment of error is overruled.
VII. Manifest Weight Sufficiency of the Evidence: ObstructingOfficial Business
 {¶ 42} The Appellant argues that the verdict of guilty for obstructing official business was against the manifest weight of the evidence and was not supported by sufficient evidence. When considering an appellant's claim that a conviction is against the manifest weight of the evidence, our role is to determine whether the evidence produced at trial "attains the high degree of probative force and certainty required of a criminal conviction." State v. Getsy (1998), 84 Ohio St.3d 180,193, 702 N.E.2d 866. The reviewing court must dutifully examine the entire record, weighing the evidence and considering the credibility of witnesses, keeping in mind that credibility generally is an issue for the trier of fact to resolve. State v. Thomas (1982), 70 Ohio St.2d 79,80, 434 N.E.2d 1356; State v. DeHass (1967), 10 Ohio St.2d 230,227 N.E.2d 212, paragraph one of the syllabus. The reviewing court may reverse the conviction if it appears that the fact finder, in resolving evidentiary conflicts, "clearly lost its way and created such a manifest miscarriage of justice that the conviction must be reversed and a new trial ordered." State v. Thompkins (1997), 78 Ohio St.3d 380, 387,678 N.E.2d 541. On the other hand, we will not reverse a conviction if the state presented substantial evidence upon which the trier of fact could reasonably conclude that all essential elements of the offense had been established beyond a reasonable doubt. State v. Eley (1978),56 Ohio St.2d 169, 383 N.E.2d 132, syllabus.
 {¶ 43} An appellate court's function when reviewing the sufficiency of the evidence to support a criminal conviction is to examine the evidence admitted at trial to determine whether such evidence, if believed, would convince the average mind of the defendant's guilt beyond a reasonable doubt. State v. Jenks (1991), 61 Ohio St.3d 259, 574 N.E.2d 492, paragraph two of the syllabus. The relevant inquiry is whether, after reviewing the evidence in a light most favorable to the prosecution, any rational trier of fact could have found the essential elements of the crime proven beyond a reasonable doubt. Id., citing Jackson v.Virginia (1979), 443 U.S. 307, 319, 99 S.Ct. 2781.
 {¶ 44} The Appellant was charged with obstructing official business in violation of R.C. 2921.31(A), which states,
 No person, without privilege to do so and with purpose to prevent, obstruct, or delay the performance by a public official of any authorized act within the public official's official capacity, shall do any act that hampers or impedes a public official in the performance of the public official's lawful duties.
 {¶ 45} Under R.C. 2921.31, if a defendant specifically intends a particular obstructing effect and accomplishes his or her purpose, the statute is violated. See City of Dayton v. Peterson, 56 Ohio Misc. 12,15, 381 N.E.2d 1154. The purpose with which a person commits an act is determined from the manner in which it is done, the means used, and all the other facts and circumstances in evidence. State v. Huffman (1936),131 Ohio St. 27, 1 N.E.2d 313, paragraph four of the syllabus.
 {¶ 46} An examination of the trial testimony shows that the Appellant had the requisite purpose to prevent, obstruct, or delay the trooper from carrying out his official duties. The following exchange took place on cross examination of the Appellant:
 Prosecutor: Was there some reason why you wedged your knee against the seat as opposed to just putting your feet out on the ground to talk to your daughter?
 Appellant: I didn't have it wedged really on the seat, I had my foot, it's hard to show you in a car, well if I was in a car, my feet are here so I just put my knee like that.
 Prosecutor: Okay. Was there some reason when the officer asked you to get back in the car you just didn't comply with that? Put your feet back in the car?
 Appellant: Absolutely. Why should I comply with anything at this, I mean I understand yes, he is a peace officer and like I said he's got a hard job but you know, we work hard every day to pay our taxes and then my recollection of all these, like the seatbelt, you know, then you run and you're getting a speeding ticket all the time, you know.
 Prosecutor: You actually intended not to put your feet back in at that point when he told you.
 Appellant: I didn't have my feet out of the vehicle so no, you're wrong there. I never had my feet outside of the vehicle.
 Prosecutor: Well when you said you had your foot out and he asked you to put it back in.
 Appellant: I said my knee was . . .
 Prosecutor: But your foot was out of the car then.
 Defendant: No, I never said my foot was out of the car.
 Prosecutor: So what was keeping it from closing the door?
 Defendant: My knee. {¶ 47} From this testimony, it is clear that the Appellant purposely placed his knee in the way so that the trooper would not be able to close the cruiser door and carry out his business. Trial testimony also established that the Appellant's actions hampered or impeded the trooper in the performance of his duties. With regard to the incident, the trooper testified:
 Trooper: We tried to stop the arguing, you know, we instructed him several times to put his leg in the vehicle. He thought he was in charge and could do whatever that he wanted, do whatever he wanted to do. And he was hampering us in our job duties because we had to take the time to argue with this guy and physically put his leg in a patrol car which he refused to do so and that's the only way his leg got put in the patrol car 'cause I picked it up and put it in there and shut the door.
 {¶ 48} In addition to the trooper's testimony, the sergeant's testimony established that the Appellant's action impeded the law enforcement officials in the performance of their duties. The sergeant testified:
 Sergeant: At that time, I think I had my back to the cruiser, I was talking to the two young girls and suddenly I heard [the trooper] yelling at the defendant to get his leg back in the vehicle. He had taken his knee and somehow wedged it and blocked the door from being able to shut. And [the trooper] was advising him he would be charged additionally with additional charges. He kept yelling and he still refused to put his leg inside the car keeping the door from being shut.
 {¶ 49} The testimony offered at trial firmly establishes that the Appellant purposely acted in such a way as to hamper or impede law enforcement officials in the performance of their lawful duties. We therefore conclude that the Appellant's conviction for obstructing official business was supported by sufficient evidence and was not against the manifest weight of the evidence.
 VIII. Denial of Administrative License Suspension Appeal {¶ 50} The Appellant lastly argues that it was prejudicial error for the trial court to deny the Appellant's administrative license suspension appeal. The Appellant was arraigned on the OVI charge on September 14, 2005. On the same date, the court also continued the administrative license suspension. The Appellant appealed this suspension, and a hearing on the appeal was held on September 21, 2005. At that hearing, the court found probable cause and denied the appeal.
 {¶ 51} The Appellant argues that the hearing and decision regarding his administrative license suspension appeal should have taken place within five days after arraignment. Specifically, the Appellant argues that because the administrative license suspension appeal hearing took place seven days after his OVI arraignment, the court committed reversible error. R.C. 4511.197(A) governs the time frame for the appeal of an administrative license suspension. It states, in pertinent part:
 If a person is arrested for operating a vehicle, streetcar, or trackless trolley in violation of division (A) or (B) of section 4511.19 of the Revised Code[,] * * * the person may appeal the suspension at the person's initial appearance on the charge resulting from the arrest or within the period ending thirty days after the person's initial appearance on that charge, in the court in which the person will appear on that charge.
 {¶ 52} Because the appeal may be heard any time within the thirty day period following an appellant's first appearance, the trial court properly heard the appeal seven days after the Appellant's arraignment in the case sub judice. Thus, the trial court did not commit reversible error.
 IX. Conclusion {¶ 53} Because we find that none of the Appellant's preceding assignments of error are meritorious, we accordingly affirm the judgment of the Circleville Municipal Court.
JUDGMENT AFFIRMED.