OPINION
{¶ 1} Defendant-appellant, Marla Miller (hereinafter "Miller"), appeals the Bellefontaine Municipal Court's judgment of conviction and its imposition of sentence. For reasons that follow, we affirm in part and reverse in part.
 {¶ 2} On January 3, 2007 around 9:10 a.m., Ms. Yaeger noticed a three-year old girl outside of her home with an unzipped medium weight jacket and no hat or gloves. Over the course of an hour, she looked outside her window and saw the girl two more times in her yard. Due to the child's young age and the cold weather, she became concerned for the child's safety. Ms. Yaeger went outside and escorted the child across the street to her home. At that time, she identified the little girl as Hanna — Miller's daughter.
 {¶ 3} Ms. Yaeger walked Hanna over to her house and knocked on the door several times loudly but did not get a response. Thereafter, she took Hanna to the back door, which was partially blocked with a few boxes but unlocked. Ms. Yaeger told Hanna to go inside and wake up her parents. *Page 3 
 {¶ 4} Later that same day, Ms. Yaeger called the Bellefontaine Police Department to report the incident. Patrolman Newland was dispatched to the scene. After arriving, he discussed the incident with Ms. Yaeger and then proceeded to Hanna's home to talk with Hanna's mother, Miller. Patrolman Newland was at the Miller residence just four days prior for a similar incident. At that time, Newland advised Miller that if Hanna was out of the house unsupervised again, charges would be filed against her.
 {¶ 5} Newland advised Miller that Hanna had left the home with inadequate winter clothing, crossed the street, and was in Ms. Yaeger's yard for approximately one hour. Newland then charged Miller with one count of child endangering, in violation of R.C. 2919.22(A), a first degree misdemeanor.
 {¶ 6} On April 10, 2007, the case was tried to the court. The trial court found Miller guilty of endangering children and imposed a five-day jail sentence. The trial court ordered the jail sentence to run concurrent with its previously imposed but suspended five-day sentence in Miller's 2005 child endangering case, case number 05CRB00615.
 {¶ 7} On April 17, 2007, Miller filed a notice of appeal with this Court alleging the trial court erred in its finding of guilt. This appeal was assigned case number 8-07-07. Miller also filed a notice of appeal alleging the trial court erred in its imposition of the previously suspended jail term. This appeal was assigned *Page 4 
case number 08-07-08. On July 26, 2007, this Court consolidated the cases for appeal.
 {¶ 8} Miller asserts two assignments of error for review.
 ASSIGNMENT OF ERROR NO. I THE TRIAL COURT ERRED WHEN IT FOUND MS. MILLER GUILTY OF ENDANGERING CHILDREN IN VIOLATION OF R.C. 2919.22(A).
 {¶ 9} In her first assignment of error, Miller argues that the evidence was insufficient to find that she violated R.C. 2919.22(A), because James Lewellen, her fiancé, was supposed to be watching Hanna.
 {¶ 10} The State failed to respond to this assignment of error in its brief. Under these circumstances, App.R. 18(C) provides: "the court may accept the appellant's statement of the facts and issues as correct and reverse the judgment if the appellant's brief reasonably appears to sustain such action." Nonetheless, we are not persuaded that Miller's brief reasonably appears to sustain the action.
 {¶ 11} "An appellate court's function when reviewing the sufficiency of the evidence to support a criminal conviction is to examine the evidence admitted at trial to determine whether such evidence, if believed, would convince the average mind of the defendant's guilt beyond a reasonable doubt." State v. Jenks (1981), 61 Ohio St.3d 259,574 N.E.2d 492, paragraph two of the syllabus, superseded by state constitutional amendment on other grounds in State v. Smith (1997), 80 Ohio *Page 5 
St.3d 89, 684 N.E.2d 668. Accordingly, "[t]he relevant inquiry is whether, after viewing the evidence in a light most favorable to the prosecution, any rational trier of fact could have found the essential elements of the crime proven beyond a reasonable doubt." Id.
 {¶ 12} R.C. 2919.22(A) provides, in pertinent part:
 No person, who is the parent, guardian, custodian, person having custody or control, or person in loco parentis of a child under eighteen years of age * * * shall create a substantial risk to the health or safety of the child, by violating a duty of care, protection, or support.
To find the defendant guilty of child endangering under the statute, the state must prove beyond a reasonable doubt that the defendant: (1) was the parent, guardian, custodian, person having custody or control, or person in loco parentis of a child under eighteen; (2) violated a duty to said child; (3) created a substantial risk to the health or safety of the child; and (4) acted recklessly. R.C. 2919.22(A); State v.McGee (1997), 79 Ohio St.3d 193, 195, 680 N.E.2d 975.
 {¶ 13} Miller's argument that the trial court erred in finding her guilty of child endangerment when her fiancé, Mr. Lewellen, was supposed to be watching Hanna lacks merit. Although Miller is correct to point out that liability under R.C. 2919.22(A) has been extended to babysitters, the only testimony before the trial court that Mr. Lewellen was responsible for Hanna was his own testimony. See e.g. Village ofUtica v. Billman (Sept. 7, 2001), 5th Dist. No. 01 CA 24; State v. *Page 6 
 Perrine, 5th Dist. No. 2001CA00338, 2002-Ohio-2898. The trial court, however, rejected Mr. Lewellen's testimony in its entirety finding that he was not a credible witness. (Apr. 10, 2007 T. at 45). "[T]he weight to be given evidence and the credibility of witnesses are primarily for the trier of facts." State v. DeHass (1967), 10 Ohio St.2d 230, 231,227 N.E.2d 212. Consequently, there was no evidence before the trial court for it to find that Mr. Lewellen was in charge of Hanna; therefore, the trial court could find Miller guilty under R.C. 2919.22(A) as Hanna's parent.
 {¶ 14} Viewing the evidence in a light most favorable to the prosecution, a reasonable trier of fact could have found that all the essential elements of child endangerment were met. Jenks, 61 Ohio St.3d at paragraph two of the syllabus. First, R.C. 2919.22(A) requires that the State prove Miller was Hanna's "parent, guardian, custodian, person having custody or control, or person in loco parentis of a child under eighteen years of age * * *". Both Ms. Yaeger and Patrolman Newland testified that Hanna was Miller's child. (Apr. 10, 2007 T. at 6, 9, 10, 17). Ms. Yaeger also testified that Hanna was around two to three years of age. (Id. at 6). With this testimony, a rational trier of fact could conclude that R.C. 2919.22(A)'s first element was met.
 {¶ 15} Second, R.C. 2919.22(A) requires that the State prove that Miller violated a duty owed to Hanna. Parents have a duty to care for and protect their *Page 7 
minor children. R.C. 2919.22(A). See also State v. Caton,137 Ohio App.3d 742, 749-50, 739 N.E.2d 1176. The testimony accepted by the trial court as credible established that, on January 3, 2007, Hanna, a two to three year old girl, left her home with a medium weight unzipped jacket with no hat or gloves, crossed a street to the neighbor's house to see a kenneled dog, and remained outside unsupervised in this condition for approximately one hour. (Apr. 10, 2007 T. at 5-6, 17). Ms. Yaeger testified that when she went outside to take the little girl home, Hanna's hands "felt like ice" and "her little nose was all red." (Id. at 9). When Ms. Yaeger took Hanna home, she knocked on the front door several times loudly to alert Miller, but no one came to the door. (Id. at 8-9). Then, Ms. Yaeger took Hanna around to the side door, cracked the door, let Hanna into the home, and told her to "go in and wake mommy up." (Id.).
 {¶ 16} Newland testified that when he arrived at the house around 10:15 a.m., he also knocked loudly on the front door but received no answer. (Id. at 16). Thereafter, Newland knocked on the back bedroom window, and Miller came to the door. (Id.). Newland stated that Miller "looked as if she had just gotten out of bed and had just woken up." (Id.). After Newland informed Miller that Hanna had left the home earlier that morning, Miller became upset and pointed to a butter knife and box she used to jam and barricade the door shut. (Id. at 17). *Page 8 
 {¶ 17} Viewing all this evidence, a rational trier of fact could have concluded that Miller was, in fact, asleep and not properly supervising Hanna, which resulted in her leaving the home. Consequently, a rational tier of fact could have concluded that Miller violated a duty of care and protection, which she owed Hanna, her minor child. Thus, R.C.2919.22(A)'s second element was met.
 {¶ 18} Third, R.C. 2919.22(A) requires that the State prove that Miller created a substantial risk to the health or safety of the child. R.C. 2901.01(A)(8) defines `substantial risk' as: "* * * a strong possibility, as contrasted with a remote or significant possibility, that a certain result may occur or that certain circumstances may exist." Beside the fact that a two or three year-old little girl was outside in the cold January weather unsupervised for an hour, the trial court also heard testimony regarding the child's physical state as well. Ms. Yaeger testified that Hanna's hand "felt like ice" and "her little nose was all red." (Apr. 10, 2007 T. at 9). In addition, Ms. Yaeger testified that her home was located across the street from Hanna's home; that Hanna crossed a street that intersected with a main road; and that the road Hanna crossed had no crosswalk. (Id. at 7-8). Ms. Yaeger also testified that Hanna was near a kenneled dog. (Id. at 12). Based on all this evidence, a rational trier of fact could conclude that there was a substantial risk to Hanna's health and safety. Thus, R.C. 2919.22(A)'s third element was met. *Page 9 
 {¶ 19} Fourth, and finally, R.C. 2919.22(A) requires that the State prove that Miller acted recklessly. R.C. 2901.22(C) provides:
 A person acts recklessly when, with heedless indifference to the consequences, he perversely disregards a known risk that his conduct is likely to cause a certain result or is likely to be of a certain nature. A person is reckless with respect to circumstances when, with heedless indifference to the consequences, he perversely disregards a known risk that such circumstances are likely to exist.
The evidence before the trial court established that Miller knew Hanna was leaving the home unsupervised. Patrolman Newland testified that he was at Miller's home just four days prior to the incident on January 3, 2007 and informed Miller that Hanna left the home. (Apr. 10, 2007 T. at 17-18). Miller's actions also indicate that she was aware that Hanna was leaving the home. When Patrolman Newland arrived at Miller's on January 3, 2007 and told her that Hanna left the residence, Miller pointed to a butter knife and a box she used to jam and barricade the side door. (Id. at 17). Thus, evidence existed to show that Miller knew that Hanna was leaving the home.
 {¶ 20} Miller's defense is that Lewellen was supposed to be babysitting Hanna. The only testimony to support this allegation, however, is Lewellen's own testimony, which the trial court found lacked credibility. Consequently, the only evidence accepted by the court supported finding Miller liable for supervising Hanna and also supported finding that Miller was sleeping at the time when Hanna *Page 10 
left the home. (Id. at 8-9, 16). A rational tier of fact could conclude that Miller acted recklessly based on these facts; and therefore, R.C.2919.22(A)'s fourth element was met.
 {¶ 21} In conclusion, when the evidence is appropriately viewed in a light most favorable to the prosecution, a rational trier of fact could conclude that all of R.C. 2919.22(A)'s elements were proven beyond a reasonable doubt. Jenks, 61 Ohio St.3d 259 at paragraph two of the syllabus.
 {¶ 22} Miller's first assignment of error is, therefore, overruled.
 ASSIGNMENT OF ERROR NO. II THE TRIAL COURT ERRED WHEN IT IMPOSED THE SUSPENDED JAIL SENTENCE.
 {¶ 23} In her second assignment of error, Miller argues that the trial court erred when it imposed the suspended jail sentence on a prior conviction without affording her due process of law. Miller argues that the trial court did not provide her with notice that the court would re-impose the suspended sentence nor did the court give her an opportunity to have a hearing. The State, on the other hand, does not dispute that the trial court should have given Miller written notice and provided a hearing; but rather, the State argues that trial court's failure was harmless error. The State alleges that the trial on the second charge was effectively a hearing as to the violation of conditions imposed on the prior *Page 11 
sentence because Miller had an opportunity to present evidence in her defense. We disagree with the State's characterization of the error at issue.
 {¶ 24} Courts treat the imposition of a suspended sentence as the equivalent of revoking probation as it relates to the defendant's due process rights. State v. Clark, 3d Dist. Nos. 3-05-14; 3-05-20,2006-Ohio-1421, ¶ 5, citing City of Beavercreek v. Koch (Sept. 18, 1985), 2d Dist. No. 85-CA-2; City of Bay Village v. Gaines (Jul. 27, 2000), 8th Dist. No. 76391. The minimum requirements of due process that must be afforded to a probationer include:
 (a) written notice of the claimed violations of parole; (b) disclosure to the [probationer] of evidence against him; (c) opportunity to be heard in person and to present witnesses and documentary evidence; (d) the right to confront and cross-examine adverse witnesses (unless the hearing officer specifically finds good cause for not allowing confrontation); (e) a `neutral and detached' hearing body such as a traditional parole board, members of which need not be judicial officers or lawyers; and (f) a written statement by the factfinders as to the evidence relied on and reasons for revoking [probation]. * *
State v. Miller (1975), 42 Ohio St.2d 102, 104, 326 N.E.2d 259, quotingMorrissey v. Brewer (1972), 408 U.S. 471, 489, 92 S.Ct. 2593,33 L.Ed.2d 484. See also, Gagnon v. Scarpelli (1973), 411 U.S. 778, 93 S.Ct. 1756,36 L.Ed.2d 484 (probationer must be afforded written notice and hearing); State v. Perez, 3d. Dist. No. 4-01-33, 2002-Ohio-2191, ¶ 10;State v. Osborn, 3d Dist. No. 9-05-35, 2006-Ohio-1890, ¶ 8; State v.Hutchins, 3d Dist. No. 8-07-06, 2007-Ohio-6020, ¶¶ 13-14. *Page 12 
 {¶ 25} In this case, Miller was not given written notice of the fact that the trial court would re-impose the previously suspended jail term. Miller first became aware of this possibility at the conclusion of the second trial preceding sentencing. At sentencing, the prosecutor stated:
 I believe Marla Miller has a history of this. Indeed, if the Court will note, there's a prior conviction for which she got five days suspended jail time. So the State would ask that the Court impose that suspended time in addition to any other time the Court deems appropriate under the circumstances.
(Apr. 10, 2007 T. at 46). In addition, although Miller was given an opportunity to respond to the imposition of the sentence in the second case, it is not clear that the trial court afforded her an opportunity to speak concerning the re-imposition of the suspended jail time. Under these circumstances, we conclude that Miller's due process rights were violated. Perez, 2002-Ohio-2191, at ¶ 10; Clark, 2006-Ohio-1421, at ¶ 5 citing Koch, 2d Dist. No. 85-CA-2; Osborn, 2006-Ohio-1890, at ¶ 8;Hutchins, 2007-Ohio-6020, at ¶¶ 13-14.
 {¶ 26} The State contends that the trial court's due process violation was `harmless error.' Several cases have suggested that lack of written notice or a hearing can be harmless error. See, e.g., State v.Bleasdale (1990), 69 Ohio App.3d 68, 70, 590 N.E.2d 43; State v.Logan (Nov. 24, 1987), 3d Dist. No. 3-87-9; City of Westlake v.Galla (Feb. 1, 1996), 8th Dist. Nos. 69174, 69195, 69196. However, those cases have typically involved scenarios where: the defendant was *Page 13 
given notice but it was not in writing; or the defendant claimed that he was not given a hearing, but the court provided a hearing of some form. In this case, however, no notice was given to Miller until the day of the trial right before sentencing. As a result, Miller was effectively denied a hearing on whether the suspended sentence should be re-imposed.[1] Thus, the Constitutional infirmity in this case was not harmless error.
 {¶ 27} Miller's second assignment of error is, therefore, sustained.
 {¶ 28} Having found no error prejudicial to the appellant herein in the particulars assigned and argued in case number 8-07-07, we affirm the judgment of the trial court.
 {¶ 29} Having found error prejudicial to the appellant herein in the particulars assigned and argued in case number 8-07-08, we reverse the judgment of the trial court and remand for a hearing on whether the suspended sentence in case number 05CRB00615 should be re-imposed.
Judgment affirmed in Case No. 8-07-07. Judgment reversed and causeremanded in Case No. 8-07-08.
 ROGERS, P.J., and SHAW, J., concur.
[1] We are not saying the trial court must conduct a separate hearing before it re-imposes a suspended sentence; however, if the court chooses to re-impose suspended time simultaneously with its sentence in the subsequent case, it must comport with due process requirements.Miller, 42 Ohio St.2d at 104, quoting Morrissey, 408 U.S. at 489. See also, Gagnon, 411 U.S. 778 (probationer must be afforded written notice and hearing); Perez, 2002-Ohio-2191, at ¶ 10. *Page 1