OPINION
{¶ 1} Defendant-appellant, Alan Fretas, appeals from a judgment of the Franklin County Municipal Court finding him guilty, pursuant to a jury verdict, of child endangering in violation of R.C. 2919.22(A). Because (1) the sufficiency and weight of the evidence support the trial court's judgment, and (2) the prosecution's closing argument did not deprive defendant of a fair trial, we affirm. *Page 2 
 {¶ 2} On February 15, 2007, defendant missed work to watch his ill three-year-old son. That afternoon, after giving his son his cough medicine and putting him down for a nap, defendant remembered how much, as a child, he enjoyed watching Mickey Mouse. Knowing his son loved surprises, defendant decided to go to a nearby store to purchase a Mickey Mouse digital movie while his son slept. As his son normally napped for more than two hours, defendant believed he had ample time to return before his son awoke. Before leaving, defendant made sure his son was still asleep; he then departed out the back door of the house after setting the burglar alarm. No one else was home at that time.
 {¶ 3} As he paid for the movie, defendant received a phone call from his sister, alerting him the alarm in his home had sounded and police had been summoned to the house. After defendant left the house, his son awakened, climbed over the gate at the top of the stairs, and went down to the first floor, setting off a motion detector in the process. Once the police arrived, defendant's son let them into the house. One of the responding officers, Frank Hetterscheidt, testified he was dispatched to the house around 3:07 p.m; defendant arrived back at the house at 3:26 p.m.
 {¶ 4} When the police questioned defendant about leaving his son home alone, defendant informed them he left the child in the care of his sister-in-law. As the police wanted to talk to her, defendant called someone on his phone, spoke briefly with that person, and handed the phone to Hetterscheidt. The woman on the phone told the police she had been watching the child but left. After Hetterscheidt asked her another question, she hesitated and then asked to speak to defendant again. Hetterscheidt conversed no further with the woman. *Page 3 
 {¶ 5} At that point, Hetterscheidt completed a report for child endangering but did not charge defendant. He contacted Franklin County Children Services to notify the agency of the situation. Two hours later, a caseworker from the agency called Hetterscheidt and informed him that defendant's sister-in-law, Brandie Bornstein, told the caseworker Bornstein was working all day and had not been watching defendant's child. Hetterscheidt returned to the house and interviewed Bornstein, who reiterated she had not been watching defendant's son that day because she was working. Hetterscheidt did not believe Bornstein was the person he spoke to on the telephone earlier that day.
 {¶ 6} As a result of the events involving his son, defendant was charged with a misdemeanor count of child endangering in violation of R.C. 2919.22(A). Pursuant to a jury trial beginning November 12, 2007, defendant was found guilty, and the court imposed a fine of $300.
 {¶ 7} Defendant appeals, assigning three errors:
 1. The Trial Court Erred When It Allowed the Prosecutor to Argue to the Jury the Legal Principle that the Jury Could Base a Guilty Verdict Upon its Own Determination of the "Inherent" Risk to the Child After the Judge Had Refused to Give Such a Jury Instruction Because the Judge Had Determined that "Inherent Risk" to a Child Was Not the Established law In Ohio For Child Endangering.
 2. The Verdict of Guilty Was Not Substantiated by the Evidence.
 3. To the Extent that Defendant's Conviction for Child Endangering Is Based Upon a "Per Se" Test Because His Child Was Three years Old, the Conviction Violates Defendant's Due Process Right to Clear Notice of Proscribed Conduct Since There Is No Legislatively Imposed Duty to Never Leave a Three Year Old Without Active Supervision For Any Specific Length of Time. *Page 4 
Because defendant's three assignments of error are interrelated, we discuss them jointly. All contend defendant was convicted of leaving his three-year-old son home alone despite the state's failure to produce the necessary evidence that leaving the child created a substantial risk of harm to the child. Defendant frames that core issue as (1) wrongful application of a per se rule that allowed the state to circumvent its evidentiary burden, and (2) the state's improper closing argument.
I. Sufficiency and Manifest Weight of the Evidence {¶ 8} Defendant initially contends the trial court applied a per se rule that child endangering is demonstrated when, without proof of any particular risk, a three-year-old child is left at home alone. Coupled with that contention, defendant asserts the state failed to present sufficient evidence of a substantial risk, and the jury's verdict is against the manifest weight of the evidence.
A. Sufficiency of the Evidence
 {¶ 9} Generally, a review of the sufficiency of the evidence is a question of law. State v. Thompkins (1997), 78 Ohio St.3d 380, 386. We construe the evidence in the light most favorable to the prosecution and determine whether a rational trier of fact could have found the essential elements of the offense proven beyond a reasonable doubt.State v. Jenks (1991), 61 Ohio St.3d 259, paragraph two of the syllabus;State v. Conley (Dec. 16, 1993), Franklin App. No. 93AP-387.
 {¶ 10} Defendant was convicted of child endangering, in violation of R.C. 2919.22(A). In relevant part, that statute states "[n]o person, who is the parent * * * of a child under eighteen years of age * * * shall create a substantial risk to the health or safety of the child, by violating a duty of care, protection, or support." R.C. 2901.01(A)(8) *Page 5 
defines "substantial risk" as "a strong possibility, as contrasted with a remote or significant possibility, that a certain result may occur or that certain circumstances may exist."
 {¶ 11} Because R.C. 2919.22 specifies no mental state, the Supreme Court of Ohio has determined that recklessness is an element of child endangering under R.C. 2919.22(A) and (B). State v. Dunn, Pickaway App. No. 06CA6, 2006-Ohio-6550, citing State v. McGee (1997),79 Ohio St.3d 193, 195; State v. Adams (1980), 62 Ohio St.2d 151, 153; State v.O'Brien (1987), 30 Ohio St.3d 122, 124; R.C. 2901.21(B) (stating that if the section of a statute "neither specifies culpability nor plainly indicate a purpose to impose strict liability, recklessness is sufficient culpability to commit the offense"). A person acts recklessly, as defined by R.C. 2901.22(C), "when, with heedless indifference to the consequences, he perversely disregards a known risk that his conduct is likely to cause a certain result or is likely to be of a certain nature." A person acts recklessly "with respect to circumstances when, with heedless indifference to the consequences, he perversely disregards a known risk that such circumstances are likely to exist." Id.
 {¶ 12} In the state's case against defendant under R.C. 2919.22(A), the state thus had the burden to prove beyond a reasonable doubt that defendant (1) was the parent of a child under 18 years of age, (2) violated a duty toward that child, (3) created a substantial risk to the safety of that child, and (4) acted with recklessness. See State v.Allen (2000), 140 Ohio App.3d 322, 323, citing State v. Caton (2000),137 Ohio App.3d 742. Defendant's assigned errors challenge only one of the factors, claiming the state failed to prove the existence of a substantial risk of harm.
 {¶ 13} In support, defendant cites several cases which, according to defendant, hold that merely leaving a child alone does not demonstrate a substantial risk of harm. *Page 6 
Each, however, differs significantly from defendant's case because either the children involved were much older than defendant's child or the parent did not make himself completely inaccessible to his child. For example, State v. Martin (1999), 134 Ohio App.3d 41, andAllen, supra, two of the cases defendant relies on, involved children aged eight and seven, respectively. Similarly, State v. Boone (Aug. 14, 1996), Hamilton App. No. C-950427, involved a child much older than defendant's child whose mother left him alone in a store parking lot as a disciplinary measure.
 {¶ 14} In addition to the age differential, Boone did not completely absent herself from her seven-year-old son, but left him alone in a store parking lot as a disciplinary measure. In overturning her conviction, the First District Court of Appeals noted the mother only drove about 50 yards away before turning around and re-entering the lot. See, also, Village of Utica v. Billman (Sept. 7, 2001), Licking App. No. 01 CA 24 (overturning child endangerment conviction of mother who left her sleeping four and eight year old children alone with their nine and eleven year old siblings when the oldest child was awake and had a cell phone with which to contact mother if needed) and State v. Perrine, Stark App. No. 2001CA00338, 2002-Ohio-2898 (reversing child endangering conviction for mother who permitted 12 year old and 13 year old to watch her four-year-old son where they could reach mother by cell phone).
 {¶ 15} Finally, defendant cites State v. McLeod, 165 Ohio App.3d 434,2006-Ohio-579, at ¶ 16, for the principle that "[t]he failure to realize an ideal level of supervisory attention of a child does not equate to acting with heedless indifference to the consequences." Again, although the general proposition is valid, McLeod varies factually because there the custodian remained near the child. Likewise, defendant's reliance upon *Page 7 State v. Bennett (July 13, 1995), Cuyahoga App. No. 68039, is misplaced. Bennett, like defendant here, took steps to provide a safe environment for his children, but his four-year-old daughter was burned when she climbed up a five and one-half foot tall entertainment center and took down a lighter. While the child endangering conviction was reversed in part due to the safety measures Bennett took, another important factor was that at the time of the accident Bennett was "absent" only because he was upstairs in the bathroom with his attention distracted by the need to tend to the younger children also in his care, a significant difference from defendant's leaving his child unattended while he drove to a store several miles away.
 {¶ 16} Indeed, contrary to defendant's contentions, City of Mason v.Rasmussen (Mar. 26, 2001), Warren App. No. CA2000-08-077 addressed facts similar to those here and upheld a mother's child endangering conviction for leaving her sleeping three and one-half-year-old son home alone for 25 to 30 minutes while she drove several miles away to run errands. Defendant, however, asserts Rasmussen should not be followed because it falls into the impermissible trap of substituting a per se rule so that the single act of leaving a young child completely alone and totally unsupervised in itself creates a strong possibility of harm to the child. According to defendant, his conviction here makes a parent working in the garden outside the house a criminal if he or she leaves a child unsupervised inside the home.
 {¶ 17} Even if Rasmussen, on its facts, presented no evidence of any particular risk, additional factors here support the trial court's judgment. The child in Rasmussen was unable to open the door when the police came to the defendant's home. The police gained entrance only after the defendant arrived and let them into the locked house. *Page 8 
Here, by contrast, defendant's son was able to open the door and actually opened it to strangers, albeit police officers. Not only did the child's ability to open the door present the harm of the child's allowing strangers into the house, but the fact he could have exited the house unsupervised and unable to care for himself presented a strong possibility of harm. Moreover, defendant did not just step outside his house to work in the yard. Instead, defendant left his three-year-old son alone and unsupervised, and then drove several miles away on a snowy day.
 {¶ 18} Because a rational trier of fact could find that defendant's behavior created a substantial risk of harm for his son, sufficient evidence, though perhaps not overwhelming evidence, supports defendant's conviction.
B. Manifest Weight of the Evidence
 {¶ 19} When presented with a manifest weight argument, we engage in a limited weighing of the evidence to determine whether sufficient competent, credible evidence supports the jury's verdict to permit reasonable minds to find guilt beyond a reasonable doubt. State v.Tanksley, Franklin App. No. 07AP-262, 2007-Ohio-6596, citingConley, supra; Thompkins, supra, at 387 (stating that "[w]hen a court of appeals reverses a judgment of a trial court on the basis that the verdict is against the weight of the evidence, the appellate court sits as a `thirteenth juror' and disagrees with the factfinder's resolution of the conflicting testimony"). The court, reviewing the entire record, determines whether the jury clearly lost its way and created such a manifest miscarriage of justice that the conviction must be reversed and a new trial ordered. Thompkins, supra. Determinations of credibility and weight of the testimony remain within the province of the trier of fact.State v. DeHass (1967), 10 Ohio St.2d 230, paragraph one of the syllabus. Reversals of *Page 9 
convictions as being against the manifest weight of the evidence are reserved for cases where the evidence weighs heavily in favor of the defendant. State v. Otten (1986), 33 Ohio App.3d 339, 340.
 {¶ 20} The manifest weight of the evidence here supports a finding of substantial risk. The state's evidence revealed defendant's child was able to open the door, as both police officers testified; the fact he easily could have exited the house presented a substantial risk of harm. See Barnes v. Virginia (Va.App.2005), 622 S.E.2d 278. As the court explained in Barnes, the defendant there left her sleeping children, two and four years of age, alone in an unlocked apartment while she was shopping. "When the children awoke, they had no idea where their mother was or where they should look for her. * * * [T]hey * * * easily could have wandered out * * * into vehicular traffic, or gotten lost outside, or injured themselves in any number of ways that children of such a young age can." Id. at 281. In upholding the conviction, Barnes focused on the mother's complete inaccessibility to her children. See, also,State v. Miller, Logan App. No. 8-07-07, 2007-Ohio-6711 (upholding child endangering conviction where two to three year old child able to leave the family home unsupervised).
 {¶ 21} Although defendant cites State v. Marzetti, Franklin App. No. 03AP-692, 2004-Ohio-3376, that case fails to support defendant's manifest weight of the evidence argument. Marzetti upheld the child endangering convictions of two parents who left their three children, ages eleven, nine, and six, alone in a house where the source of heat was an open oven. Defendant contends that Marzetti required proof of a specific risk to support a conviction for child endangering that the state here failed to present. Defendant, however, overlooks the testimony that his son was able to open the front door and did so, *Page 10 
thus demonstrating the existence of a specific and substantial risk. Defendant's conviction is not against the manifest weight of the evidence.
II. Prosecution's Closing Argument {¶ 22} Apart from his contentions regarding the evidence, defendant asserts the prosecution's closing argument deprived him of a fair trial. The test for prejudice regarding prosecutorial misconduct is "`whether the remarks were improper and, if so, whether they prejudicially affected substantial rights of the defendant.'" State v. Hartman (2001),93 Ohio St.3d 274, 295, citing State v. Hessler (2000),90 Ohio St.3d 108, 125, quoting State v. Smith (1984), 14 Ohio St.3d 13, 14. Closing arguments are not evidence, and the parties are given considerable latitude in making them. State v. Maurer (1984), 15 Ohio St.3d 239,269-270. Whether counsel has exceeded the permissible bounds of closing argument is generally the trial court's discretionary decision, and an appellate court reviews a trial court's judgment for an abuse of discretion. Wilson v. Ahn, Hamilton App. No. C-020615, 2003-Ohio-4305.
 {¶ 23} Prior to closing argument, the prosecution requested an instruction telling the jury it "may consider the inherent risks involved in leaving a child of this age alone and unsupervised by using common sense and common knowledge." (Tr. Vol. II, 194.) The trial court rejected the instruction on the grounds that the "inherent risks" language did not state accepted Ohio law. In closing argument, however, the prosecution used the language of the rejected instruction, telling the jury it had "the power to decide that the inherent risks involved in leaving such a young child home unattended and unsupervised" constituted child endangering. (Tr. Vol II, 238.) Defendant objected, and the trial court overruled the objection, stating that "as long as it is not proposed to them as a legal *Page 11 
principle, but as their common sense interpretation of those facts, the fact that she is using the language, as long as it is not presented to them where that language came from or that that language is legal as opposed to argument, it is really permissible." (Tr. Vol II, 239-240.)
 {¶ 24} Defendant contends the prosecution's use of "inherent risk" led the jury to use their own experiences outside of the record to create risks that the evidence presented at trial did not support. "Thus, each juror, based upon their own private concept of inherent risk, and without regard to whether there is any evidence in the record to support their concept of inherent risk, could vote to convict without the Defense having any opportunity to understand, confront or rebut each juror's person view of `inherent risk.'" (Defendant's brief, 17.)
 {¶ 25} The "inherent risks" language emanates from Rasmussen, whose facts are similar but not identical to the facts giving rise to defendant's conviction. Rasmussen did not alter the test for finding child endangering, but applied it to facts dissimilar from the vast majority of cases defendant cites. In doing so, Rasmussen noted some "inherent risks" in dealing with a three-year-old child. The trial court arguably was correct when it did not instruct the jury concerning "inherent risks", as "inherent risks" is not the legal standard for child endangering in Ohio. Nonetheless, "inherent risks" may be a valid consideration in determining whether, for example, the state's evidence of the child's ability to open the door met the parameters of the jury instruction on substantial risk.
 {¶ 26} Moreover, the trial court instructed the jury to render a verdict based solely on the evidence admitted during the trial. The trial court defined "evidence" as "all the testimony received from the witnesses and the exhibits." (Tr. Vol. II, 246.) Before opening *Page 12 
statements were given, the trial court also instructed the jury to consider the evidence offered during the trial, not "statements of the attorneys." (Tr. Vol. I, 176.) The jury instructions provided the statutory definition of substantial risk and correctly stated the elements the state had to satisfy before a guilty verdict could be rendered. In light of all those circumstances, the prosecutor's statement cannot be said to have prejudicially affected defendant's substantial rights. Defendant's first, second, and third assignments of error are overruled.
 {¶ 27} Having overruled defendant's three assignments of error, we affirm the judgment of the trial court.
Judgment affirmed.
 SADLER and TYACK, JJ., concur. *Page 1