COURT OF APPEALS OF VIRGINIA


Present:    Judges Frank, Kelsey and Haley
Argued at Chesapeake, Virginia


ARTESHIA S. BARNES
                                                           OPINION BY
v.         Record No. 0069-05-1                   JUDGE D. ARTHUR KELSEY
                                                         NOVEMBER 29, 2005
COMMONWEALTH OF VIRGINIA


          FROM THE CIRCUIT COURT OF THE CITY OF PORTSMOUTH
                           Dean W. Sword, Jr., Judge

          S. Jane Chittom, Appellate Defender (Virginia Indigent Defense
          Commission, on briefs), for appellant.

          Leah A. Darron, Assistant Attorney General (Judith Williams
          Jagdmann, Attorney General, on brief), for appellee.


       The trial court convicted Arteshia S. Barnes of two counts of child endangerment in

violation of Code § 40.1-103(A).  Barnes appeals, arguing the evidence was insufficient to prove

she acted with criminal negligence.  Finding the evidence sufficient, we affirm.

                                            I.

       On appeal, we review the evidence in the "light most favorable" to the Commonwealth.

Commonwealth v. Hudson, 265 Va. 505, 514, 578 S.E.2d 781, 786 (2003).  That principle

requires us to "discard the evidence of the accused in conflict with that of the Commonwealth,

and regard as true all the credible evidence favorable to the Commonwealth and *all fair

inferences to be drawn therefrom*."  Parks v. Commonwealth, 221 Va. 492, 498, 270 S.E.2d 755,

759 (1980) (emphasis in original and citation omitted).

       In June 2004, Jacqueline Love rented an apartment on Virginia Avenue in Portsmouth.

Between 2:15 and 2:20 p.m., Love heard someone at her apartment door.  When she opened the

door, she found Barnes's two small children, ages 2 and 4, standing outside. Love had seen the children before and noticed that the door to their mother's nearby apartment was wide open. Love told the children to go back home. They evidently went home, but then returned to Love's apartment about 5 minutes later. Love fed the children and called the police after about 5 to 10 minutes. She reported to the police her suspicion that the two young children had been left alone.

Officer Keough received a dispatch at about 3:05 p.m. and arrived at Love's apartment shortly thereafter. About the same time, Barnes drove up to her apartment. Keough watched as Barnes carried about 10 grocery bags into her apartment. She then walked over to Love's apartment and admitted to Keough that she had left the children alone to go to the grocery store. They were asleep when she left, Barnes explained. Keough inspected the door to Barnes's apartment and found it equipped with a deadbolt. No key was in the lock. Concluding the children's safety was in jeopardy, Keough notified Child Protective Services of his findings.

Barnes went to trial on amended indictments alleging that she "willfully or negligently" caused or permitted the lives of the two children "to be endangered" or the "health of such child[ren] to be injured" in violation of Code § 40.1-103(A). The prosecution presented its evidence through Love and Officer Keough. Barnes elected not to testify. Sitting as factfinder, the trial judge held Barnes was criminally negligent for leaving her 2 and 4-year-old children alone under these circumstances. Among the risks the children faced, the trial judge found, was the foreseeable possibility that they would wake up, go outside looking for their mother, and be struck by a vehicle on Virginia Avenue.

Barnes appeals, arguing that the evidence fails as a matter of law to support her convictions under Code § 40.1-103(A).

II.

When addressing the sufficiency of the evidence, we "'presume the judgment of the trial court to be correct' and reverse only if the trial court's decision is 'plainly wrong or without evidence to support it.'" Kelly v. Commonwealth, 41 Va. App. 250, 257, 584 S.E.2d 444, 447 (2003) (*en banc*) (citations omitted). "This standard comes from Code § 8.01-680 — the basis for our appellate review of factfinding in civil and criminal cases as well as bench and jury trials." Seaton v. Commonwealth, 42 Va. App. 739, 747 n.2, 595 S.E.2d 9, 13 n.2 (2004). In practical terms, a reviewing court does not "ask itself whether *it* believes that the evidence at the trial established guilt beyond a reasonable doubt." Stevens v. Commonwealth, 46 Va. App. 234, 249, 616 S.E.2d 754, 761 (2005) (*en banc*) (emphasis in original and citation omitted). We ask only whether "*any* rational trier of fact could have found the essential elements of the crime beyond a reasonable doubt." Id. (quoting Kelly, 41 Va. App. at 257, 584 S.E.2d at 447 (emphasis in original)); see also Haskins v. Commonwealth, 44 Va. App. 1, 7, 602 S.E.2d 402, 405 (2004); Crowder v. Commonwealth, 41 Va. App. 658, 663, 588 S.E.2d 384, 387 (2003); Hoambrecker v. City of Lynchburg, 13 Va. App. 511, 514, 412 S.E.2d 729, 731 (1992).[1]

In this case, the trial court convicted Barnes of violating Code § 40.1-103(A), which provides in part: "It shall be unlawful for any person employing or having the custody of any child willfully or negligently to cause or permit the life of such child to be endangered or the health of such child to be injured . . . or to cause or permit such child to be overworked, tortured, tormented, mutilated, beaten or cruelly treated." Code § 40.1-103(A) covers a wide swath of

---

[1] "This familiar standard gives full play to the responsibility of the trier of fact fairly to resolve conflicts in the testimony, to weigh the evidence, and to draw reasonable inferences from basic facts to ultimate facts." Kelly, 41 Va. App. at 257-58, 584 S.E.2d at 447 (citation omitted). It also ensures that we remain faithful to "our duty not to substitute our judgment for that of the trier of fact, even were our opinion to differ." Crowder, 41 Va. App. at 663 n.1, 588 S.E.2d at 387 n.1 (internal quotation marks and citations omitted).

criminal behavior (from mere endangerment to actual torture) and requires only a threshold *mens rea* showing of "criminal negligence" — a standard higher than mere "lack of ordinary care." Ellis v. Commonwealth, 29 Va. App. 548, 556-57, 513 S.E.2d 453, 457 (1999) (quoting Mosby v. Commonwealth, 23 Va. App. 53, 59, 473 S.E.2d 732, 735 (1996) (quoting Bell v. Commonwealth, 170 Va. 597, 611, 195 S.E. 675, 681 (1938))).

Criminal negligence requires what ordinarily would be called "gross negligence," for it involves a "reckless or indifferent disregard of the rights of others, under circumstances reasonably calculated to produce injury, or which make it not improbable that injury will be occasioned, and the offender knows, or is charged with the knowledge of, the probable result of his acts." Ellis, 29 Va. App. at 557, 513 S.E.2d at 457-58 (quoting Bell, 170 Va. at 611-12, 195 S.E. at 681); see also Banovitch v. Commonwealth, 196 Va. 210, 220, 83 S.E.2d 369, 375 (1954); Wright v. Commonwealth, 39 Va. App. 698, 703, 576 S.E.2d 242, 244 (2003).

Unlike willful misconduct, "gross or criminal negligence involves a failure to act under circumstances that indicate a passive and indifferent attitude toward the welfare of others." Ellis, 29 Va. App. at 557, 513 S.E.2d at 458. This "reckless disregard" standard can be "shown by conduct that subjects a child to a substantial risk of serious injury, as well as to a risk of death, because exposure to either type of risk can endanger the child's life." Commonwealth v. Duncan, 267 Va. 377, 385, 593 S.E.2d 210, 215 (2004).

Under the unique circumstances of this case, a rational factfinder could find that Barnes was criminally negligent in leaving her 2 and 4-year-old children alone in an unlocked apartment while making herself inaccessible for a period of time long enough to travel to a grocery store, collect and check out 10 bags of groceries, and then drive back to her apartment. When the children awoke, they had no idea where their mother was or where they should look for her. Though the children exercised the good sense to walk to a neighbor's apartment, they just as

easily could have wandered out on Virginia Avenue into vehicular traffic, or gotten lost outside, or injured themselves in any number of ways that children of such a young age can. For these reasons, the trial court was within its factfinding discretion to find that Barnes's gross indifference to her children's safety rose to the level of criminal negligence.

We also reject Barnes's argument that Ellis v. Commonwealth, 29 Va. App. 548, 513 S.E.2d 453 (1999), which reversed a Code § 40.1-103(A) conviction, requires that we reverse Barnes's conviction as well. In Ellis, a mother left two small children in her apartment for 15 to 30 minutes while she walked over to a neighbor's porch about 30 to 50 yards away. Id. at 553, 513 S.E.2d at 456 (summarizing trial court's findings). She did not make herself completely inaccessible to her children. Had they hollered out the front door for their mother, she may have heard them. Had they run over to the neighbor's porch to look for her, she was there to be found. Had a neighbor found the children and looked for Ellis, she could have been located easily enough. The situation here is quite different. Unlike the mother in Ellis, Barnes absented herself entirely from her children, her neighbors, and anyone else who might find the children wandering outside. Her total inaccessibility distinguishes this case from Ellis.

The same can be said about the specific nature of the risk. The risk addressed in Ellis was the risk of fire from a gas stove that the mother accidentally left on before walking over to her neighbor's porch. Ellis reversed the conviction under Code § 40.1-103(A) because the evidence proved only that the mother "inadvertently failed to turn off a gas jet on her stove before stepping out of her apartment to visit a friend while her daughters slept in a closed bedroom." Id. at 557, 513 S.E.2d at 458. It was in this context that Ellis held that the mother showed no "callous indifference to the fact that her children were at risk of injury while she left them unattended." Id. Here again, the situation differs considerably. As the trial judge noted, one of the most serious risks facing Barnes's 2 and 4-year-old children was that they would

awake from their nap, walk out of an unlocked front door "trying to find out where mama got to," and then "wander" out into vehicular traffic on Virginia Avenue.[2] Ellis did not consider, much less decide, whether a parent exposing a child to a risk of this particular sort could be found criminally negligent.

Finally, we reject Barnes's assertion that Ellis stands for the proposition that temporary parental abandonment of young children can never — as a matter of law — constitute a violation of Code § 40.1-103(A). Given the fact-intensive nature of the inquiry, the sufficiency analysis on appeal depends entirely on the specific circumstances of each case: the gravity and character of the possible risks of harm; the degree of accessibility of the parent; the length of time of the abandonment; the age and maturity of the children; the protective measures, if any, taken by the parent; and any other circumstance that would inform the factfinder on the question whether the defendant's conduct was criminally negligent.

III.

Finding the evidence sufficient to support a finding of criminal negligence under Code § 40.1-103(A), we affirm Barnes's convictions.

<u>Affirmed.</u>

---

[2] Acknowledging that the point was "not in evidence," the trial judge noted that Virginia Avenue had become a busy thoroughfare for trucks serving a nearby marine terminal. The trial judge nonetheless found that "even if it wasn't a busy street," the risk of injury to "a small child being in the street" was still present. Barnes did not object to the judge's remarks about truck traffic either at trial or in a motion to set aside. See Rule 5A:18. Nor does Barnes assert on appeal that the ends-of-justice exception should apply. See Widdifield v. Commonwealth, 43 Va. App. 559, 564, 600 S.E.2d 159, 162 (2004) (*en banc*) ("This Court will not consider, *sua sponte*, an ends-of-justice argument under Rule 5A:18."). We need not address this issue, however, because we hold the evidence sufficient without relying on the comments about truck traffic on Virginia Avenue. The risk of injury to a 2 or 4-year-old stepping out in front of a passenger vehicle on a street with normal traffic volume is no more tolerable than the risk posed by a truck on a street with abnormally high traffic.