COURT OF APPEALS OF VIRGINIA

Present: Judges O'Brien, Malveaux and Senior Judge Clements
Argued at Richmond, Virginia

UNPUBLISHED

LEONIDES DORESTAL, JR., S/K/A
 LEONIDAS DORESTAL, JR.

                                                        MEMORANDUM OPINION[*] BY
v.       Record No. 1373-18-2                      JUDGE JEAN HARRISON CLEMENTS
                                                            NOVEMBER 5, 2019

COMMONWEALTH OF VIRGINIA


                FROM THE CIRCUIT COURT OF THE CITY OF FREDERICKSBURG
                                 Sarah L. Deneke, Judge

              Julia B. Dillon (Law Office of Julia B. Dillon, PLLC, on brief), for
              appellant.

              Rosemary V. Bourne, Senior Assistant Attorney General (Mark R.
              Herring, Attorney General, on brief), for appellee.


        In a jury trial, Leonides Dorestal (appellant) was convicted for child cruelty committed in

September, 2016.[1]  On appeal, appellant challenges the sufficiency of the evidence to sustain his

conviction.  Appellant claims that the Commonwealth did not prove that, during the period of the

indictment, he inflicted any of the injuries later found on the body of the four-year-old victim,

W.A.  Finding that the evidence was sufficient to support appellant's conviction, we affirm the

judgment of the trial court.

---

        [*] Pursuant to Code § 17.1-413, this opinion is not designated for publication.

        [1] The jury also convicted appellant for child cruelty and felonious abuse or neglect of
W.A. in October, 2016.  This Court denied appellant's petition for appeal challenging those
convictions.

BACKGROUND

"In general, when reviewing a challenge to the sufficiency of the evidence to support a conviction, an appellate court considers the evidence in the light most favorable to the Commonwealth, the prevailing party below, and reverses the judgment of the trial court only when its decision is plainly wrong or without evidence to support it." Marshall v. Commonwealth, 69 Va. App. 648, 652-53 (2019). "If there is evidentiary support for the conviction, 'the reviewing court is not permitted to substitute its own judgment, even if its opinion might differ from the conclusions reached by the finder of fact at the trial.'" Chavez v. Commonwealth, 69 Va. App. 149, 161 (2018) (quoting Banks v. Commonwealth, 67 Va. App. 273, 288 (2017)). "In accordance with familiar principles of appellate review, the facts will be stated in the light most favorable to the Commonwealth, the prevailing party at trial." Gerald v. Commonwealth, 295 Va. 469, 472 (2018) (quoting Scott v. Commonwealth, 292 Va. 380, 381 (2016)).

In the early fall of 2016, appellant and his girlfriend, Sehar Asim, lived in a small Fredericksburg apartment with Antwaun Carey, W.A., A.A., and appellant and Asim's infant son. W.A. and A.A. were Asim's children. Appellant took an active role in the caretaking responsibilities for all three children.

On October 6, 2016, W.A. was taken to the emergency room at Mary Washington Hospital. Sarah Alley, a forensic nurse at the hospital, examined W.A. and photographed numerous injuries on the child's body. The photographs of W.A.'s injuries were introduced at trial. Near his eyes and forehead, W.A. had petechiae, or hemorrhages under the skin caused by burst blood vessels at the surface of the skin. As Alley testified, petechiae may be caused by many things, including persistent coughing, blunt force trauma, and strangulation, and can take

several days to heal. The appearance of W.A.'s facial petechiae was consistent with those caused by blunt force trauma because they were grouped in clusters.

In addition to the petechiae on W.A.'s face, the child had redness and swelling across the bridge of his nose, abrasions on one arm, a resolving bruise or mild redness on the outer left elbow, red and light purple discoloration on the back of one ear, a small abrasion on the other ear, reddened linear discoloration on his chin, multiple and distinct patterned bruising areas on his outer and inner legs, linear and round discolored areas on his upper left thigh, petechiae on his buttocks, resolving petechiae on his mid-back, linear patterned redness and bruising on his left flank, bruising on his right flank, hemorrhaging in his left eye, crescent-shaped abrasions on his arms, and faint petechiae below his neck. The patterned area of bruising on the left outer thigh had a square or rectangular appearance, and there were "wide strips of bruising" on the legs and other areas. Alley was unable to say when W.A. had sustained the bruises.

On the same day W.A. visited the emergency room, Detective Carlos Reyes of the Fredericksburg police interviewed appellant for several hours. Appellant initially spoke about his relationship with Asim and the children. However, over the course of nearly an hour, Reyes said that the relationship appellant described was not the same as the account W.A. had provided to authorities. When Reyes asked what had happened that day, appellant said that W.A. had been urinating in inappropriate places; appellant held W.A. down by the legs while Asim spanked him twice on the buttocks. At the time, W.A. was wearing pants. Appellant said he did not know the cause of the petechiae on W.A.'s face.

Appellant claimed that the marks on W.A.'s legs were caused by a playground accident, but then said he had seen only one red mark on the victim's legs after the accident. However, when Reyes questioned appellant further about the sources of the petechiae and the marks on W.A.'s face and legs, appellant admitted that he had spanked the victim four times with a belt on

the previous Sunday, or about ten days before. Appellant said he had "whooped" W.A. because he had lied about urinating on the floor. Appellant said he did not see any marks on W.A. immediately afterward.

Reyes asked appellant if he realized that he had caused marks found on W.A., and appellant agreed that he did. Appellant told Reyes that the marks on W.A.'s legs were probably caused by appellant spanking the child two weeks earlier. Reyes asked appellant whether he now realized that his conduct had reached the point of child abuse, and appellant responded that he did.

During further discussion, appellant admitted that he became upset and frustrated with W.A. that day after the child had urinated on the floor again. Ultimately, appellant admitted that he had lost his temper and that he had thrown the child on the couch a few times, thinking the child would not be hurt. Appellant said W.A. fell to the floor from the couch the third time appellant threw him. Reyes had appellant use a doll to demonstrate how he had thrown W.A. to the couch.

When Reyes left appellant alone in the interview room, appellant said to himself, "I don't like lying. I get scared, panicked." Later, appellant said, "Damn, I'm going to jail. I need a lawyer."

At trial, a portion of appellant's testimony to a special grand jury in 2017 was read into evidence. In that testimony, appellant stated that, about one to two weeks before October 6, 2016, he used "a kid's belt" to spank W.A. four times. Appellant said he punished W.A. because he had either urinated on the floor or poked A.A. with a stick. He said that the "beginning of September was the last time we did the corporal punishment on him." Appellant admitted that he was spanking W.A. "very often." Appellant was twenty-three years old and six feet and six inches tall. He stated that Carey had never disciplined the children in the household.

Dr. Robin Foster, the director of the child protective team at Virginia Commonwealth University Health, testified as an expert in forensic pediatrics and child abuse. Dr. Foster examined the photographs taken during Alley's forensic examination of W.A. Foster stated that it was not uncommon for children of W.A.'s age to have bruises, but that bruises usually are "over bony areas instead of soft tissue areas." She opined that it was "uncommon" to find bruises where W.A.'s bruises were located – the thighs, calves, upper arms, trunk, and the soft part of the back. Foster said that while an average three-year-old child may have as many as twelve bruises, W.A. had "somewhere over three dozen" bruises. W.A.'s bruises "would not be expected to have occurred in even several short falls in terms of total number of bruises." Dr. Foster stated that bruises can take days to weeks to heal. Foster opined that "because of the number of injuries and because of the distinct morphology of a good number of those bruises it is consistent . . . with physical abuse."

Carey testified that on the morning of October 6, 2016, Asim got upset with W.A. after he urinated on the floor. He and appellant helped hold W.A. down while Asim hit the child seven times with a belt. Carey said that when W.A. refused to apologize, appellant lifted him up and dropped him softly on the sofa five or six times.

## ANALYSIS

"It is unlawful for any person . . . having the custody of any child willfully or negligently to cause or permit the life of such child to be endangered or the health of such child to be injured . . . ." Code § 40.1-103(A).[2] "Code § 40.1-103(A) covers a wide swath of criminal behavior (from mere endangerment to actual torture) and requires only a threshold *mens rea*

---

[2] "This Court invalidated part of Code § 40.1-103(A) for vagueness, specifically, use of the word 'may'[in that portion of the statute]. However, that does not change the statute's focus on the protection of a child's life, health, or moral well-being and does not affect our analysis or ruling." King v. Commonwealth, 56 Va. App. 133, 138 n.3 (2010) (citing Commonwealth v. Carter, 21 Va. App. 150 (1995)).

showing of 'criminal negligence' — a standard higher than mere 'lack of ordinary care.'" Barnes v. Commonwealth, 47 Va. App. 105, 111 (2005) (quoting Ellis v. Commonwealth, 29 Va. App. 548, 556-57 (1999)). Criminal negligence "involves a 'reckless or indifferent disregard of the rights of others, under circumstances reasonably calculated to produce injury, or which make it not improbable that injury will be occasioned, and the offender knows, or is charged with the knowledge of, the probable result of his acts.'" Id. (quoting Ellis, 29 Va. App. at 557). A determination of criminal negligence is "specific to the circumstances of each case and, thus, whether a defendant's conduct is criminally negligent is usually a question for the trier of fact, unless reasonable minds could not differ." Carosi v. Commonwealth, 280 Va. 545, 556 (2010).

Appellant maintains that the evidence did not exclude the reasonable hypothesis of innocence that other adults in the home could have caused W.A.'s injuries. We must determine "'not whether there is some evidence to support' the appellant's hypothesis of innocence, but, rather, 'whether a reasonable [fact finder] upon consideration of all the evidence, could have rejected [the appellant's] theories in his defense and found him guilty of [the charged crime] beyond a reasonable doubt.'" Emerson v. Commonwealth, 43 Va. App. 263, 277 (2004) (quoting Commonwealth v. Hudson, 265 Va. 505, 513 (2003)). "Whether an alternate hypothesis of innocence is reasonable is a question of fact and, therefore, is binding on appeal unless plainly wrong." Id. (quoting Archer v. Commonwealth, 26 Va. App. 1. 12-13 (1997)). "Merely because defendant's theory of the case differs from that taken by the Commonwealth does not mean that every reasonable hypothesis consistent with his innocence has not been excluded. What weight should be given evidence is a matter for the [factfinder] to decide." Haskins v. Commonwealth, 44 Va. App. 1, 9 (2004) (quoting Miles v. Commonwealth, 205 Va. 462, 467 (1964)).

The jury heard evidence of the numerous injuries to W.A., and a variety of explanations, from the prosecution and the defense, about the cause of the injuries. In finding appellant guilty, the jury necessarily accepted the Commonwealth's evidence, and rejected appellant's evidence regarding the cause of W.A.'s injuries. "Determining the credibility of witnesses . . . is within the exclusive province of the jury, which has the unique opportunity to observe the demeanor of the witnesses as they testify." Dalton v. Commonwealth, 64 Va. App. 512, 525 (2015) (quoting Lea v. Commonwealth, 16 Va. App. 300, 304 (1993)) (alteration in original); see also Commonwealth v. McNeal, 282 Va. 16, 22 (2011) (fact finder is entitled to resolve any conflicts in the evidence). "When 'credibility issues have been resolved by the jury in favor of the Commonwealth, those findings will not be disturbed on appeal unless plainly wrong.'" Towler v. Commonwealth, 59 Va. App. 284, 291 (2011) (quoting Corvin v. Commonwealth, 13 Va. App. 296, 299 (1991)).

Appellant argues that there was no evidence that in September, 2016, he caused any of the injuries later found on W.A.'s body. Acknowledging that he disciplined W.A. in September, 2016, he claims that he did not "admit to crossing a line from acceptable discipline to abuse."

Notably, however, in his interview with Reyes, appellant said that he realized he had caused marks on the victim that had just been discovered that day by the authorities. Specifically, he said that he likely caused the marks on the victim's legs when he spanked the child about two weeks earlier. To Reyes and to the grand jury, appellant admitted using a "kid's belt" and hitting W.A. four times with it. He further admitted that his conduct exceeded the boundary of acceptable discipline and was child abuse. Thus, appellant's own admissions proved that his conduct in September, 2016, constituted child cruelty under Code § 40.1-103.1(A).

In Virginia, it is well-established that proof of the corpus delicti, that a crime actually occurred, is essential to any criminal prosecution. See Allen v. Commonwealth, 287 Va. 68, 74 (2014). Under the corpus delicti rule, "an accused cannot be convicted solely on his uncorroborated extrajudicial admission or confession." Id. (quoting Watkins v. Commonwealth, 238 Va. 341, 348 (1989)). The Commonwealth must provide "slight corroboration of the confession" to prove beyond a reasonable doubt that the crime was committed. Id. (quoting Cherrix v. Commonwealth, 257 Va. 292, 305 (1999)). That corroboration may be provided by circumstantial or direct evidence. See Watkins, 238 Va. at 349. The corroborative evidence is sufficient if, "when taken along with the confession, it proves the commission of the crime beyond a reasonable doubt." Morning v. Commonwealth, 37 Va. App. 679, 685 (2002). In determining the sufficiency of the corroboration of a defendant's statement, inferences drawn from proven facts "are within the province of the trier of fact so long as those inferences are reasonable and justified." Id. at 687.

Dr. Foster and Alley agreed that the variety of injuries suffered by W.A., including over three dozen bruises, was not consistent with being caused by a fall on a playground or normal play, but rather were consistent with multiple falls or blunt force trauma. Dr. Foster opined that the number of W.A.'s injuries and the distinct pattern of many of the bruises, which could take days or weeks to heal, were consistent with physical abuse.

In addition, the Commonwealth introduced photographs of the numerous injuries on W.A.'s body that went undiscovered until October 6, 2016. As this Court has observed, "[a] picture may speak a thousand words, and these do." Campbell v. Commonwealth, 12 Va. App. 476, 483 (1991) (*en banc*). The photographs reveal linear bruises on W.A.'s legs—which appellant admitted causing—consistent with strikes by a belt and buckle. "Although 'a parent has a right to punish a child within the bounds of moderation and reason,' he or she is not legally

justified in doing so to the extent that it 'exceeds due moderation.'" Id. (quoting Carpenter v. Commonwealth, 186 Va. 851, 861 (1947)).

> Where a question is raised as to whether punishment has been moderate or excessive, the fact is one for the jury to determine from the attending circumstances, considering the age, size and conduct of the child, the nature of his misconduct, the nature of the instrument used for punishment, and the kind of marks or wounds inflicted on the body of the child.

Carpenter, 186 Va. at 863.

The evidence proved that appellant, an adult who was six feet and six inches tall, struck four-year-old W.A. four times with a belt for minor misbehavior. The fact that bruises from appellant's September, 2016 spanking of W.A. were still visible weeks later speaks volumes to the force and violence of that incident and that appellant did not discipline the child "within the bounds of moderation and reason."

We thus find ample evidence to corroborate appellant's statement to the police. Therefore, a reasonable finder of fact could have found beyond a reasonable doubt that appellant was guilty of committing child cruelty in September, 2016.

## CONCLUSION

For the foregoing reasons, we affirm appellant's conviction.

Affirmed.