UNPUBLISHED

COURT OF APPEALS OF VIRGINIA

Present:  Judges AtLee, Fulton and Raphael
Argued by videoconference

SHANITTA NICOLE CUFFEE, S/K/A
  SHANITA CUFFEE

                                                    MEMORANDUM OPINION[*] BY
v.        Record No. 1101-24-1                      JUDGE RICHARD Y. ATLEE, JR.
                                                          OCTOBER 7, 2025
COMMONWEALTH OF VIRGINIA


FROM THE CIRCUIT COURT OF THE CITY OF SUFFOLK
Robert H. Sandwich, Jr., Judge

James S. Ellenson for appellant.

Justin M. Brewster, Assistant Attorney General (Jason S. Miyares,
Attorney General; Suzanne Seidel Richmond, Assistant Attorney
General, on brief), for appellee.


Following a jury trial, the trial court convicted Shanitta Nicole Cuffee of child cruelty.

On appeal, Cuffee argues that the evidence was insufficient to prove the conviction and that the

trial court erred in giving a jury instruction for child cruelty "which included a portion of the

statute which has previously been ruled unconstitutional." For the following reasons, we affirm.

I. BACKGROUND

In May 2020, Cuffee lived in Suffolk with Travis Butler, their eight-year-old daughter

T.C., and Butler's stepfather, Herbert Williams (Herbert). Butler's mother, Brenda Williams

(Brenda), did not live in the home but co-owned it with Herbert.

On May 10, Brenda learned from her daughter that Butler had made a concerning post on

Facebook, stating that "somebody was going to get killed today." She went to the house and

---

[*] This opinion is not designated for publication. See Code § 17.1-413(A).

observed that Butler was acting "erratic" and out of character. Concerned Butler was having a schizophrenic episode, Brenda and Herbert went to the magistrate's office to seek an emergency custody order (ECO).

Brenda and Herbert returned to the house and waited outside for police to arrive. Butler was also outside, and shortly after, Cuffee and T.C. arrived in a car driven by Cuffee. Officers Brock and Leslie got to the residence and attempted to serve Butler with the ECO. Cuffee, who remained in the car with T.C., became argumentative and stated that Butler had done nothing wrong. Officer Brock tried to speak with Butler, but he was "agitated," "walking back and forth," and "saying all sorts of nonsense."

Seconds after the officers, Brenda, and Herbert turned their attention to Cuffee's vehicle, Butler attacked all four of them with a knife. Officer Leslie and Butler "tussl[ed]" on the ground. Cuffee and T.C. immediately exited the car and ran over to Butler and Officer Leslie. Cuffee screamed at the officers to leave Butler alone, and T.C. stood close by, screaming and crying.

Eventually, Officers Brock and Leslie tased Butler, but Butler got up and started running at Officer Leslie. Cuffee grabbed T.C.'s hand, followed Butler across the street, and yelled at Officer Leslie to stop. Officer Leslie yelled at Cuffee to "get back." Cuffee, still holding T.C.'s hand, moved in between Officer Brock and Butler as Butler walked toward Officer Brock whose firearm was out and pointed at Butler. Officer Brock testified at trial that she did not have a clear shot at Butler because Cuffee and T.C. were in her line of fire and she could not risk hitting them. Butler turned and walked over to T.C. and Cuffee, and Cuffee did not move T.C. away from him.

Several other officers arrived on scene shortly after the attacks. Butler continued to be uncooperative, so the officers drew their firearms and ordered Butler to get on the ground.

Cuffee and T.C. got in front of Butler and screamed at him to lay down. Officer Brock told Cuffee to "back up." Cuffee alerted the officers to T.C., yelling "don't do that to my daughter" and "y'all not gonna shoot my daughter's daddy in front of me and her." With T.C. standing next to her, Cuffee moved in between the officers and Butler and extended her arms out from her side. After several chaotic minutes, during which Cuffee yelled at officers while T.C. yelled at her parents to comply with the officers, Butler was arrested within arm's reach of Cuffee and T.C.

Cuffee was later interviewed by police detectives. During the interview, Cuffee agreed that she got between Butler and the officers while they had their weapons drawn.

At Cuffee's jury trial, the parties discussed jury instructions. Instruction 28 listed the elements of child cruelty. It stated, in relevant part, that the Commonwealth must prove

> (1) That the defendant had custody of [T.C.], who was a child under the age of 18; and
>
> (2) That the defendant willfully or negligently caused or permitted:
>    (a) the life of such child to be endangered; and/or
>    (b) the health of such child to be injured; and/or
>    (c) the child to be beaten or cruelly treated.

The trial court noted for the record that the parties agreed on all jury instructions and none were in dispute. The jury found Cuffee guilty of child cruelty. Cuffee now appeals.

## II. ANALYSIS

### A. *Sufficiency of the Evidence*

"When an appellate court reviews the sufficiency of the evidence underlying a criminal conviction, its role is a limited one." *Commonwealth v. Garrick*, 303 Va. 176, 182 (2024). "The judgment of the trial court is presumed correct and will not be disturbed unless it is 'plainly wrong or without evidence to support it.'" *Pijor v. Commonwealth*, 294 Va. 502, 512 (2017) (quoting Code § 8.01-680). "Thus, 'it is not for this [C]ourt to say that the evidence does or does not

- 3 -

establish [the defendant's] guilt beyond a reasonable doubt because as an original proposition it might have reached a different conclusion.'" *Commonwealth v. Barney*, 302 Va. 84, 97 (2023) (alterations in original) (quoting *Cobb v. Commonwealth*, 152 Va. 941, 953 (1929)). The only relevant question for this Court on review "is, after reviewing the evidence in the light most favorable to the prosecution, whether any rational trier of fact could have found the essential elements of the crime beyond a reasonable doubt." *Id.* (quoting *Sullivan v. Commonwealth*, 280 Va. 672, 676 (2010)).

The child cruelty statute provides that "[i]t shall be unlawful for any person employing or having the custody of any child willfully or negligently to cause or permit the life of such child to be endangered or the health of such child to be injured[.]" Code § 40.1-103(A). "The negligence required to sustain a conviction under Code § 40.1-103 is 'criminal negligence.'" *Ellis v. Commonwealth*, 29 Va. App. 548, 556 (1999).

Cuffee argues that the evidence was insufficient to prove that she acted willfully or negligently. She contends that she never encouraged or forced T.C. to get out of the car and stand with her and Butler. She also asserts that the "potential harm was only for a few, brief seconds" and that "[t]here was no time for [her] to do anything."

"Criminal negligence requires what ordinarily would be called 'gross negligence[.]'" *Barnes v. Commonwealth*, 47 Va. App. 105, 111 (2005). "[I]t involves a 'reckless or indifferent disregard of the rights of others, under circumstances reasonably calculated to produce injury, or which make it not improbable that injury will be occasioned, and the offender knows, or is charged with the knowledge of, the probable result of his acts.'" *Id.* (quoting *Ellis*, 29 Va. App. at 557). "Unlike willful misconduct, 'gross or criminal negligence involves a failure to act under circumstances that indicate a passive and indifferent attitude toward the welfare of others.'" *Id.* "This 'reckless disregard' standard can be 'shown by conduct that subjects a child to a

substantial risk of serious injury, as well as to a risk of death, because exposure to either type of risk can endanger the child's life.'" *Id.* (quoting *Commonwealth v. Duncan*, 267 Va. 377, 385 (2004)). Whether a defendant acted negligently is a determination that "necessarily will be specific to the circumstances of each case and, thus, whether a defendant's conduct is criminally negligent is usually a question for the trier of fact, unless reasonable minds could not differ." *Carosi v. Commonwealth*, 280 Va. 545, 556 (2010).

The evidence showed that Cuffee negligently caused or permitted T.C.'s life to be endangered. Cuffee told the officers several times that T.C. was "right" there and to leave Butler alone. Further, Cuffee allowed T.C. to remain outside during the entire encounter, even holding T.C.'s hand while they followed the officers' and Butler's every move.

Officers told Cuffee several times to "back up" when they deployed their tasers and drew their firearms. Instead, Cuffee, taking T.C. with her, moved and stood in front of Butler directly in the line of fire. More than once, Cuffee, holding T.C.'s hand, moved her daughter into the officers' lines of fire. For more than six minutes Cuffee stood, and allowed T.C. to stand, next to Butler and between at least four officers who had their firearms drawn and pointed at them.

While Cuffee argues that "[t]here was no time for [her] to do anything," her awareness of T.C.'s presence and her actions during the encounter showed a "reckless or indifferent disregard" for T.C.'s safety. *See Barnes*, 47 Va. App. at 111. At no point during the six minutes following Butler's initial attack did Cuffee remove T.C. from the situation; instead, Cuffee used T.C.'s presence to reason with the officers not to shoot Butler. Cuffee allowed T.C. to remain in a situation "under circumstances reasonably calculated to produce injury," and necessarily knew that T.C. could have been seriously injured or killed. *See id.*

Cuffee knew the officers had their firearms drawn, would possibly use them, and subsequently either moved T.C. into the officers' lines of fire or permitted her to remain within

them.  Additionally, Cuffee had just watched Butler attack four people with a knife, two of whom were his own parents.  Nonetheless, she moved their daughter to stand with Butler.  Accordingly, a reasonable juror could have determined that Cuffee's actions were criminally negligent and that she committed child cruelty.

B.  *Jury Instruction 28*

Cuffee argues that the trial court erred by giving the jury instruction for child cruelty.  She alleges Instruction 28 included a portion of the child cruelty statute that has been ruled unconstitutional and that she was charged and convicted of violating "exactly the same part of this statute."  Cuffee concedes that she did not preserve the issue for appeal and asks this Court to invoke the ends of justice exception.

"No ruling of the trial court . . . will be considered as a basis for reversal unless an objection was stated with reasonable certainty at the time of the ruling, except for good cause shown or to enable this Court to attain the ends of justice."  Rule 5A:18.  "The purpose of this contemporaneous objection requirement is to allow the trial court a fair opportunity to resolve the issue at trial, thereby preventing unnecessary appeals and retrials."  *Creamer v. Commonwealth*, 64 Va. App. 185, 195 (2015).

Rule 5A:18 "contains an exception that allows us to reach issues on appeal that were not raised below 'for good cause shown or to enable the Court of Appeals to attain the ends of justice.'"  *Merritt v. Commonwealth*, 69 Va. App. 452, 459-60 (2018); s*ee also* Rule 5A:18.  "'The ends of justice exception is narrow and is to be used sparingly,' and applies only in the extraordinary situation where a miscarriage of justice has occurred."  *Cornell v. Commonwealth*, 76 Va. App. 17, 31 (2022) (quoting *Conley v. Commonwealth*, 74 Va. App. 658, 682 (2022)).  "In determining whether the exception applies, the Court considers two questions: '(1) whether there is error as contended by the appellant; and (2) whether the failure to apply the ends of

justice provision would result in a grave injustice.'" *Id.* at 30 (quoting *Williams v. Commonwealth*, 294 Va. 25, 27-28 (2017)). "The burden of establishing a manifest injustice is a heavy one, and it rests with the appellant." *Id.* at 31 (quoting *Conley*, 74 Va. App. at 683).

Cuffee fails to carry her burden to establish a manifest injustice. Code § 40.1-103(A) reads in pertinent part that

> It shall be unlawful for any person employing or having the custody of any child willfully or negligently to cause or permit the life of such child to be endangered or the health of such child to be injured, *or willfully or negligently to cause or permit such child to be placed in a situation that its life, health or morals may be endangered*[.]

(Emphasis added). In *Commonwealth v. Carter*, 21 Va. App. 150, 155 (1995), this Court declared that the second portion of Code § 40.1-103(A) was "unconstitutionally vague." We also stated, "[b]ecause we find that the offending language of Code § 40.1-103 is severable, the remainder of the statute is undisturbed by this opinion." *Id.*

Contrary to Cuffee's assertions, neither the indictment nor Instruction 28 included language from the portion of the statute this Court held was unconstitutional. Because Cuffee failed to show that a miscarriage of justice occurred, we will not apply the ends of justice exception.[1]

### III. CONCLUSION

For the foregoing reasons, we affirm the trial court's judgment.

*Affirmed.*

---

[1] Additionally, Cuffee's challenge to the jury instruction would also fail under the approbate/reprobate doctrine. The trial court specifically noted that the parties agreed on all of the jury instructions and none were in dispute.