COURT OF APPEALS OF VIRGINIA

Present: Chief Judge Decker, Judges Malveaux and Duffan
Argued at Richmond, Virginia

GABRIELLE NADINE ROMAGNA

v.      Record No. 2000-24-2

COMMONWEALTH OF VIRGINIA

MEMORANDUM OPINION* BY
CHIEF JUDGE MARLA GRAFF DECKER
MARCH 10, 2026

FROM THE CIRCUIT COURT OF KING AND QUEEN COUNTY
B. Elliott Bondurant, Judge

Paul C. Galanides (Law Office of Paul C. Galanides, P.C., on brief),
for appellant.

Craig W. Stallard, Senior Assistant Attorney General (Jason S.
Miyares,[1] Attorney General, on brief), for appellee.

Gabrielle Nadine Romagna appeals her convictions for two counts of felony child abuse

resulting in serious injury in violation of Code § 18.2-371.1. She argues that the evidence failed

to establish a willful act, omission, or refusal to provide necessary care for her two minor

children. She further contends that it failed to demonstrate the children were seriously injured.

After reviewing the record, and based on the relevant legal principles, we disagree with

Romagna and affirm the convictions.

---

* This opinion is not designated for publication. See Code § 17.1-413(A).

[1] Jay C. Jones succeeded Jason S. Miyares as Attorney General on January 17, 2026.

BACKGROUND[2]

At the time of the instant offenses, two children in Romagna's care, A.T. and A.R., came to the attention of social services for possible abuse and neglect. Romagna was not related to A.T., a two-year-old girl, but shared custody of her with A.T.'s biological mother. A.R., a six-year-old boy, was Romagna's biological child.

On November 8, 2023, Romagna took A.T. to the hospital after an incident at home. The child had a swollen eye, burn marks, and blisters. Dr. Robin Foster, a professor of pediatrics and emergency medicine at the Children's Hospital of Richmond at Virginia Commonwealth University, examined A.T. and diagnosed her with first- and second-degree burns from chemical exposure.

Romagna told hospital staff that A.T. may have gotten into some laundry detergent pods. Romagna explained she had placed four pods on the dresser and thought they were out of A.T.'s reach. King and Queen County Sheriff's Investigator Phillip Cusick also spoke with Romagna about the incident. She told Investigator Cusick that she put A.T. to bed at around 8:30 p.m. the previous evening and then went to check on her at 2:00 a.m. At that time, Romagna noticed that one of the pods was smashed on the floor and another was missing. She said that when A.T. woke up at around 11:00 a.m. the next morning, her eye was swollen shut.

After receiving a report about A.T.'s injuries, Becca Pike, a family services specialist with the King and Queen County Department of Social Services, went to Romagna's home. Pike noted that A.T. slept in a closet containing a crib with one missing rail, a crib mattress, a dresser,

---

[2] On review of the evidence supporting a criminal conviction, "[a]n appellate court must view the evidence in the light most favorable to the Commonwealth, the prevailing party at trial." *Justice v. Commonwealth*, 82 Va. App. 237, 245 (2024). Doing so requires the court to "discard the evidence of the accused in conflict with that of the Commonwealth[] and regard as true all the credible evidence favorable to the Commonwealth and all fair inferences to be drawn" from that evidence. *Green v. Commonwealth*, 78 Va. App. 670, 674 (2023) (quoting *Parks v. Commonwealth*, 221 Va. 492, 498 (1980)).

and a "hanging wire" with "things" hanging from it. A child lock was on the inside of the closet door to keep A.T. from getting out. Pike saw two laundry detergent pods on the dresser and liquid detergent on the floor.

Two days later, on November 10, 2023, Pike and Cusick went to Romagna's house to check on A.R., the older child. He was born prematurely and had numerous medical conditions, including a seizure disorder. He had "a tracheostomy, or breathing tube, in his neck" and "a feeding tube" in his stomach. A.R. was legally blind, lacked mobility, and stayed in "a special bed." Romagna was trained to care for A.R. properly and received Medicaid funds for her to serve as his "personal care assistant."

Upon arrival at Romagna's home, Pike found A.R. wearing only a dirty diaper. He had a bad diaper rash, and there were "layers of dried mucus" on A.R.'s head, torso, and hands. Cusick noticed that A.R. was "kind of lurching forward" in his medical bed as if he were having difficulty breathing. His back was red, "almost to the point of starting to be bedsores," and "animal hair [was] caked on his back." A.R. was transported to the hospital that same day and was not discharged until more than two months later.

The Commonwealth charged Romagna with two counts of felony child abuse or neglect, one relating to each child. At trial, the Commonwealth presented testimony from Skylar Burton and Amy Quigley, both of whom lived with Romagna and the children for a time.

Burton lived with Romagna from June to November 2023 and testified about Romagna's treatment of A.T. Burton said that when she saw A.T. at around 11:00 a.m. on the morning of November 8, 2023, the child "looked awful"—both of her eyes were swollen, and she had what looked like "really bad burns." A.T. was screaming from the pain. Burton bathed A.T. herself. When Burton suggested they take A.T. to the hospital, Romagna said she did not want child protective services involved and would instead administer over-the-counter medication to the

- 3 -

child.  Romagna took A.T. to the hospital only after A.T.'s biological mother, whom Burton had contacted, insisted.

Quigley lived with Romagna from May to August 2023 and testified about Romagna's treatment of A.R.  Quigley testified that Romagna "was hardly" home.  According to Quigley, Romagna would come home and "fix dinner," but "[i]f she got overwhelmed, she would leave."  She said that Romagna gave A.R. his medicine only intermittently.  She specified that "[t]here was one time where he went without one of his medicines for three months."  Quigley noted that sometimes A.R. went an entire day without getting fed.  Similarly, Quigley said that Romagna was not diligent about changing A.R., bathing him, or changing his soiled linens.

Dr. Foster testified as an expert in pediatrics, pediatric emergency, and child abuse pediatrics.  She examined both A.T. and A.R. and described their medical conditions.  She explained that A.T.'s direct and lengthy exposure to the laundry detergent resulted in first- and second-degree burns.[3]  Specifically, the open lesions on A.T.'s face were "the most significant."  There were also marks on her thighs, trunk, and shoulder.  Dr. Foster noted that the severity of A.T.'s burns resulted from the duration of the exposure.  She explained that immediate washing at the site would normally prevent any burn, and the longer the exposure, the more damage caused to the tissue.

Regarding A.R., when he arrived at the hospital, he was so thin, "the bones in his chest wall" were visible.  He charted "less than the first percentile" for weight.  After consistent feedings during his extended hospitalization, A.R. gained around eighteen pounds.  He had several other conditions due to the neglect he suffered.  When Dr. Foster first examined A.R., he had red spots on his back from lying in a recumbent position.  In addition, unhygienic conditions

---

[3] As Dr. Foster clarified at trial, first-degree burns exhibit redness, and second-degree burns are present if the "outside layer of . . . skin" is "disrupt[ed]."

explained the dried mucus on his body and the yeast infections he had under his arms and in his diaper area. The skin around both A.R.'s breathing and feeding tubes was "open and oozing" from a failure to keep the areas clean and dry. A.R.'s tracheostomy was open to air without any filter or cap on it, "mak[ing him] susceptible to infection." A.R. was admitted to the hospital with five respiratory infections, including a flu virus, viral pneumonia, and a staph infection. Dr. Foster also noted that A.R.'s medications, which were very important for his health, were not filled regularly. In fact, from the prescription medication refill history, it appeared that in 2023, Romagna failed to give A.R. his medicines for five months.

Dr. Foster opined that the injuries to both A.T. and A.R. were consistent with neglect. Specifically, she testified, without objection, that A.R.'s injuries were consistent with "medical neglect," "nutritional neglect," and "hygiene neglect."

In her defense, Romagna testified about events leading to A.T.'s chemical burns. She explained that she placed the laundry detergent pods towards the back of her dresser in a place she believed was out of A.T.'s reach. According to Romagna, when she noticed at 2 a.m. that the pods "had been messed with," she also noticed detergent smeared on the carpet in A.T.'s "little room." At that time, she checked on A.T. and found her sleeping in her crib without "anything [visibly] wrong with her." Romagna indicated that she slept in the living room that night and may have been unable to hear A.T.'s cries. She denied refusing to take A.T. to the hospital.

Romagna talked about the significant medical problems plaguing A.R. since before his birth. She explained that the medicine refills were not consistent in the past because the schedule had been interrupted by A.R.'s many hospitalizations and the inability of the pharmacy at times to obtain the medicines.

The jury convicted Romagna of two counts of felony child abuse or neglect. Romagna filed a motion to set aside the verdicts. Defense counsel argued that the evidence failed to demonstrate more than simple neglect or accident and did not prove an act or omission that was willful. Counsel also contended that the evidence failed to prove A.T. and A.R. were seriously injured within the meaning of the statute. The trial court denied the motion. Romagna was sentenced to a total of ten years of incarceration, with nine years and five months suspended.

ANALYSIS

Romagna challenges the sufficiency of the evidence to support her convictions. The standard of review for sufficiency challenges is well established.

"When an appellate court reviews the sufficiency of the evidence underlying a criminal conviction, its role is a limited one." *Commonwealth v. Garrick*, 303 Va. 176, 182 (2024). "The judgment of the trial court is presumed correct and will not be disturbed unless it is 'plainly wrong or without evidence to support it.'" *Pijor v. Commonwealth*, 294 Va. 502, 512 (2017) (quoting Code § 8.01-680). As a result, "it is not for this [C]ourt to say that the evidence does or does not establish [the defendant's] guilt beyond a reasonable doubt because as an original proposition it might have reached a different conclusion." *Commonwealth v. Barney*, 302 Va. 84, 97 (2023) (alterations in original) (quoting *Cobb v. Commonwealth*, 152 Va. 941, 953 (1929)). The "only 'relevant question'" on appeal "'is, after reviewing the evidence in the light most favorable to the prosecution, whether any rational trier of fact could have found the essential elements of the crime beyond a reasonable doubt.'" *Id.* (quoting *Sullivan v. Commonwealth*, 280 Va. 672, 676 (2010)). "If there is evidentiary support for the conviction, 'the reviewing court is not permitted to substitute its own judgment, even if its opinion might differ from the conclusions reached by the finder of fact at the trial.'" *McGowan v. Commonwealth*, 72 Va. App. 513, 521 (2020) (quoting *Chavez v. Commonwealth*, 69 Va. App. 149, 161 (2018)).

In conducting our review, this Court is mindful that "[c]ircumstantial evidence is as competent and is entitled to as much weight as direct evidence." *Clark v. Commonwealth*, 78 Va. App. 726, 751-52 (2023) (quoting *Holloway v. Commonwealth*, 57 Va. App. 658, 665 (2011) (en banc)). And "the credibility of witnesses and the weight to be given to their testimony are questions exclusively for the jury," not the appellate court. *Green v. Commonwealth*, 78 Va. App. 670, 686 (2023) (quoting *Johnson v. Commonwealth*, 224 Va. 525, 528 (1982)).

Against this legal backdrop, we turn to the specific sufficiency-of-the-evidence arguments raised by Romagna. The jury convicted Romagna of violating Code § 18.2-371.1(A), which provides that any "parent, guardian, or other person responsible for the care of a child under the age of 18," is guilty of a felony if he or she, "by willful act or willful omission or refusal to provide any necessary care for the child's health causes or permits serious injury to the life or health of such child." On appeal, Romagna limits her challenge to the elements related to willfulness and the severity of the injuries. Each argument will be addressed in turn.

The law relating to willfulness is clear. "An act is willful if it is intentional, purposeful, or involves a reckless disregard that injury will probably result from it." *Justice v. Commonwealth*, 82 Va. App. 237, 246 (2024); *see also Jones v. Commonwealth*, 272 Va. 692, 699 (2006) ("To be willful, conduct 'must be knowing or intentional, rather than accidental, and be done without justifiable excuse, without ground for believing the conduct is lawful, or with a bad purpose.'" (quoting *Commonwealth v. Duncan*, 267 Va. 377, 384 (2004))). "When used in a criminal statute, the term 'willfulness' . . . 'imports knowledge and consciousness that injury will result' or 'will probably result' 'from the act'" or omission. *Eberhardt v. Commonwealth*, 74 Va. App. 23, 38 (2021) (quoting *Barrett v. Commonwealth*, 268 Va. 170, 183 (2004)).

And willfulness "is judged under an objective standard." *Justice*, 82 Va. App. at 246; *see Camp v. Commonwealth*, 68 Va. App. 694, 702 (2018). "Determining willfulness is fact specific[]

and 'depends entirely on the circumstances of each case.'" *Justice*, 82 Va. App. at 246 (citation omitted) (quoting *Barnes v. Commonwealth*, 47 Va. App. 105, 113 (2005)). As such, there are no specific factual criteria. "One fact that the [trier of fact] may consider" is whether the "act . . . 'subject[ed] a child to a substantial risk of serious injury[ or] to a risk of death.'" *Id.* (quoting *Duncan*, 267 Va. at 385). Other factors include "the degree of accessibility of the" offender and "the age and maturity of the child[]." *Miller v. Commonwealth*, 64 Va. App. 527, 544 (2015) (alteration in original) (quoting *Barnes*, 47 Va. App. at 113) (analyzing willfulness under Code § 18.2-371(i)).

The jury was properly instructed on the element of willfulness and found beyond a reasonable doubt that Romagna acted with the requisite mens rea with respect to both children. These factual determinations are supported by the record and necessarily included the jury's consideration of the circumstances surrounding the injuries.

With respect to A.T., the evidence showed that Romagna placed the laundry detergent pods on a dresser—and within arm's reach of the child.[4] When she returned to the room hours later, Romagna noticed that two of the four laundry pods were no longer on the dresser. One of those pods was crushed on the floor, and the other pod was missing. Even though she saw some detergent smeared on the floor in A.T.'s room, Romagna did not thoroughly check the crib for the other pod. She ultimately left two-year-old A.T. to sleep in the chemicals for nine more hours, and Romagna herself slept out of hearing distance. It is entirely reasonable that "the dangers inherent in such a situation could be inferred by the fact finder as a matter of common knowledge." *Duncan*, 267 Va. at 386. The prolonged exposure to the chemicals resulted in burns to A.T.'s cheek, lip, mouth, forehead, trunk, and thighs. In the morning, A.T.'s eyes were swollen shut, and she was screaming

---

[4] The jury saw photographs of the dresser and the two remaining detergent pods placed near the front edge on the top of the dresser. A reasonable fact finder could infer that the detergent pods were within A.T.'s reach.

in pain. Despite A.T.'s distressed condition, Romagna initially refused to take her to the hospital, even when prompted to do so, because she did not want child protective services involved. *See generally Blackwell v. Commonwealth*, 73 Va. App. 30, 55 (2021) (noting that a suspect's efforts to evade detection may be considered evidence of guilt). Based on the standard of review and relevant law, we hold that a reasonable fact finder could conclude from these facts that Romagna's willful omission or refusal to provide necessary care permitted A.T.'s injuries and heightened the severity.[5]

Turning to the element of willfulness as it relates to A.R., the evidence showed that Romagna was specifically trained on how to care for his complicated medical issues and was paid to do so. She was instructed on how to feed him, administer his medical care, and tend to his breathing and feeding tubes. The evidence showed that sometimes, Romagna did not feed A.R. for an entire day. Dr. Foster testified that upon his admission to the hospital, A.R. was so thin that she could see the bones in his chest wall and he placed lower than the first percentile on the growth chart for weight. Quigley testified that Romagna gave A.R. his medications only if she felt like she had to. In fact, the evidence showed that in the months immediately leading up to his hospitalization, Romagna failed to fill his prescriptions altogether. When Investigator Cusick went to Romagna's house with Pike, A.R. could hardly breathe. There were secretions leaking from his tracheostomy, which was open to the air without any filter or cap on it. His feeding tube was disintegrating where it touched his skin, causing oozing sores and redness from the lack of cleanliness. A.R. had dried mucus all over his body and a terrible diaper rash from sitting in a dirty diaper. He had red sores on his backside and animal hair caked on his back. And A.R. was

---

[5] Romagna's reliance on *White v. Commonwealth*, 68 Va. App. 111 (2017), is unavailing. In that case, the defendant's son's body was found in the bottom of a septic tank. *Id.* at 115. The Court held the mother's neglect was not willful because she had no reason to know that the lid to the tank was unsecured. *Id.* at 123-24. Significantly, here, Romagna had reason to know that A.T. had been exposed to the detergent because two detergent pods she had left on the dresser were missing and detergent from only one of the two pods was smeared on the floor near A.T.'s crib.

suffering from five separate respiratory infections for which Romagna failed to seek treatment. Dr. Foster opined that A.R.'s injuries were consistent with "medical neglect," "nutritional neglect," and "hygiene neglect." On this evidence, a reasonable jury could conclude that Romagna's omission or refusal to provide necessary care for A.R. was willful.

For these reasons, the evidence was sufficient to support the jury's finding that Romagna's neglect of both children was willful.

Turning to whether the Commonwealth sufficiently proved that each child suffered a serious injury, the statutory framework along with the factual backdrop guides our analysis. To convict a defendant under Code § 18.2-371.1(A), the child must "actually suffer serious injury as a result of a defendant's acts[,] . . . omissions," or failure to provide necessary care. *See Wood v. Commonwealth*, 57 Va. App. 286, 298 (2010). "'[S]erious injury' includes but is not limited to (i) disfigurement, (ii) a fracture, (iii) a severe burn or laceration, (iv) mutilation, (v) maiming, (vi) forced ingestion of dangerous substances, and (vii) life threatening internal injuries." Code § 18.2-371.1(A). The Supreme Court has made clear that the phrase "serious injury" is not a term of art but is subject to its plain, everyday meaning.[6] *See Tomlin v. Commonwealth*, 302 Va. 356, 372 (2023) (discussing Code § 18.2-371.1(A)'s companion statute, Code § 18.2-369(C)).

Viewing the facts in the light most favorable to the Commonwealth, A.T. had chemical burns on her face, trunk, thighs, and shoulder. Some of the burns on her face were so severe they caused open lesions on her skin. As for A.R.'s injuries, they were vast and pervasive. Romagna did not feed him properly, sometimes neglecting to feed him for an entire day. As a result, he arrived at

---

[6] "[S]erious" is defined as "having important or dangerous *possible* consequences," "attended with danger," and "caus[ing] considerable distress." *Tomlin v. Commonwealth*, 302 Va. 356, 372 (first quoting *Serious, Merriam-Webster Online Dictionary*, https://www.merriam-webster.com/dictionary/serious (last visited May 24, 2023) (emphasis added); then quoting *Serious, The Oxford English Dictionary* (2d ed. 1989); and then quoting *Serious, Webster's Third New International Dictionary* (2002)).

the hospital underfed, with bones in his chest wall visible, and he occupied a position below the first percentile on the growth chart for weight. A.R. also suffered from yeast infections, broken skin around his breathing and feeding tubes, and multiple respiratory infections as a result of the unhygienic conditions in which he was kept. Ultimately, A.R. remained in the hospital for more than two months as he underwent treatment for these conditions.

The jury was properly instructed on the element of serious injury. In addition to hearing testimony about the physical condition of each child, the jury saw photographs of the children and their medical records. Sitting as fact finder, the jury rationally concluded that Romagna's neglect of A.T. and A.R. caused them both to suffer "serious injur[ies]" for purposes of Code § 18.2-371.1(A).[7] These findings are entirely supported by the record and therefore not susceptible to being disturbed on appeal. *See McGowan*, 72 Va. App. at 521.

Given our deferential standard of review, we hold that the trial court did not err by rejecting Romagna's challenges to the sufficiency of the evidence of serious injuries to both children.

### CONCLUSION

The jury rationally concluded that Romagna's neglect of both A.T. and A.R. while the children were in her care was willful and led to them both sustaining serious injuries. Consequently, the evidence was sufficient to support Romagna's convictions on two counts of felony child neglect. The convictions are affirmed.

*Affirmed.*

---

[7] Although Romagna testified and provided some explanations, the jury was entitled to reject them. *See, e.g.*, *Rich v. Commonwealth*, 292 Va. 791, 802 (2016).